THE GOLD ISSUE MINING & MILLING COMPANY v. .PENNSYLVANIA FIRE INSURANCE COMPANY OF PHILADELPHIA, Appellant.

In Banc, April 10, 1916.

1. **JURISDICTION:** Foreign Insurance Company As Defendant: Foreign Plaintiff: Right to Sue in This State. An Arizona corporation, not licensed to do ·business in either Colorado or Missouri, can bring and maintain a suit in the circuit court of any county in Missouri, against an insurance company organized under the laws of Pennsylvania and licensed to do insurance business in this State, upon an insurance policy issued and delivered in Colorado, insuring property in that State against loss by fire, by having the summons served by the sheriff of Cole County upon the Superintendent of Insurance as the statutory agent of said insurance company, in accordance with the provisions of section 7042, Revised Statutes 1909. [GRAVES, BOND and WALKER, JJ., dissenting.]

2. ———: ———: ———: ———: Limitation to Contracts Made in this State. The statute (Sec. 7042, R. S. 1909) does not limit the right of holders of policies issued by an insurance company licensed to do business in this State to sue in the courts of this State upon contracts made in this State, but gives them the right to sue such a company in the courts of this State upon policies wherever made.

   *Held,* by GRAVES, J., dissenting, with whom BOND and WALKER, JJ., concur, that the substituted method of service of process provided by the statute is limited to actions arising on contracts made or acts done in this State.

3. ——: ——: ——: ——: **So Long as Policies Are Outstanding.** The language of the statute declaring that the authority of the Superintendent of Insurance to accept service of process for an insurance company licensed to do business in this State shall continue "so long as it shall have any policies or liabilities outstanding in this State," is not a limitation upon the authority of the Superintendent to act for such company, and not a limitation upon the character of the actions that may be brought and maintained in the courts of this State, and does not distinguish between contracts made in this State and contracts made elsewhere, but is a mere limitation of the time within which suits may be brought.

> *Held*, by GRAVES, J., dissenting, with whom BOND and WALKER, JJ., concur, that the language of the statute declaring that service of process upon the Superintendent of Insurance shall be valid and binding upon said company "so long as it shall have any policies or liabilities outstanding in this State," does characterize the kind of litigation to which foreign insurance companies can be required to respond in the courts of this State, and fixes a limitation upon the causes over which they can assume jurisdiction; and when read in connection with the preceding clause, which mentions policies issued when the company was in the State, it is apparent that the substituted method of service of process is limited to suits on contracts made within the State, and does not apply to contracts made outside the State.

4. **STATUTORY CONSTRUCTION: In the Light of Prior Condition.** There are few guides to the construction of a statute more useful than that which directs attention to the prior condition of the law as an aid in determining the meaning of any change therein.

5. **JURISDICTION: Foreign Insurance Company: Licensed to Do Business in State: Process: Application of Statutes.** Neither section 7042 nor section 7044, Revised Statutes 1909, authorizes service of process in suits brought in the courts of this State against a foreign insurance company doing business herein without a license, based upon a policy of insurance issued by it in another state or country. Section 7042 does not apply to suits based on contracts of insurance written in this State by a foreign company having no license to do business herein, but section 7044 applies to such a situation. Section 7042 limits the service of process therein provided to foreign insurance companies doing business in this State under authority from the State duly granted to them; and by section 7044 the process therein mentioned is limited to suits upon policies issued in this State by companies which do not have authority from the State to do business here.

6. ———: ———: ———: ———: **Constitutionality of Statute.** Section 7042, Revised Statutes 1909, designed to authorize service of process against foreign insurance companies doing business in this State in pursuance to a license properly granted, based upon insurance contracts made in another state, by service of summons upon the Superintendent of Insurance appointed as its agent for the purpose of process, is not unconstitutional, either as denying to said companies due process of law, or on the theory that the Legislature has no power to authorize suits to be brought in the courts of this State for a breach of an insurance contract made in another state.

7. ———: ———: ———: ———: ———: **Transitory Action.** In pursuance to broad and specific provisions of the State and Federal Constitution, the Legislature of this State has made ample provision by which a suit on a transitory cause of action—that is, a personal action founded on a violation of rights which, in contemplation of law, have no locality, but follow the person—may be brought in the courts of this State by a citizen of any other State or country, with the same freedom as is accorded to a citizen of this State. The Legislature has enacted, and had constitutional authority to enact, laws conferring jurisdiction upon the courts of this State to try and determine actions brought by a citizen of another state or country against a foreign insurance company licensed to do business in this State, upon contracts of fire insurance made in another state. or country, whether the property destroyed was located in this State or elsewhere. [GRAVES, BOND and WALKER, JJ., dissenting.]

8. **INSURANCE POLICY: Forfeiture Clauses: Estoppel: Evidence.** Where the general agents of an insurance company, at the time or subsequent to the issuance of a policy of fire insurance, are informed of the existence of any fact regarding the property which is violative of conditions expressed in the policy (such as vacancy or failure to operate a manufacturing plant for more than thirty days), then the company is estopped to interpose a violation of such conditions of forfeiture as a defense to a suit based on the policy to recover damages sustained; and testimony that the company's agents were informed at the time the policies were issued and subsequently that such conditions were not being kept and the reasons therefor and waived objection thereto, is competent evidence.

9. ———: ———: ———: **Waiver.** The general agent of the insurance company who on its behalf issues a policy is the company's *alter ego*; and his knowledge that a forfeiture condition of the policy is being violated and his assurance of "all right" is a waiver of the condition; and a waiver may be inferred from the conduct and acts of the agent, and need not be proved by express agreement; his failure to express dissent

when informed of a breach of the condition, is such evidence of waiver as to carry the question to the jury.

10. ————: ————: ————: ————: Acceptance of Premium. Acceptance by the general agent who issued the policy of payment of an unpaid premium after the fire has occurred, with knowledge, is a waiver of the conditions of forfeiture.

11. ————: Conspiracy of Agent and Insured: Telling Truth. Telling the true facts by the agents as to knowledge and waiver of policy conditions is no evidence of a conspiracy or collusion between them and the insured.

12. CORPORATION: Authority to Do Business: Payment of Fees. Where the smelting company organized under the laws of Arizona, at the time insurance policies were issued to it on its plant in Colorado, had not taken out a license to do business, but had purchased the property insured, and prior to the fire had obtained a license from Colorado, the fact that it had not obtained such license prior to the issuance of the policy is, under the laws of Colorado and Missouri, immaterial in a suit on the policies for damages by fire.

13. JURISDICTION: Raised by Answer. Jurisdiction over the person is a proper subject-matter of a plea in the answer, when the lack of jurisdiction does not appear on the face of the petition, but when such lack so appears it should be raised by demurrer. [Per GRAVES, J.].

14. ————: ————: Waiver By Appearance. A motion to quash the service of process, which is in effect a demurrer to the jurisdiction of the court over the person of defendant and limited to that purpose, is not an appearance, such as amounts to a waiver of jurisdiction. [Per GRAVES, J.].

Appeal from Audrain Circuit Court.—*Hon. J. D. Barnett*, Judge.

AFFIRMED.

*David H. Robertson, Lewis & Grant* and *Fred Herrington* for appellant.

(1) The court erred in permitting the witness Doepke to testify, over defendant's objections, to conversations between witness and defendant's agent had prior to and at the time of the issuance of the policy with reference to the effect and binding force of the

terms and conditions thereof. All such prior conversations were merged in the subsequently issued policy under the familiar rule of evidence, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. Ijams v. Providence Ins. Soc., 185 Mo. 466; Graham v. Merc. Ins. Co., 110 Mo. App. 95; Gillum v. Fire Assn., 106 Mo. App. 673; Riley v. Ins. Co., 117 Mo. App. 229; Dircks v. Ins. Co., 34 Mo. App. 43. (2) The court erred in permitting the witness Doepke to testify, over defendant's objections, to conversations between witness and the agent of insurer had after the policy was issued and while the property was occupied and in operation, as to shutting down operations and vacating the property at some time in the future, for a longer period than permitted under the terms of the policy, for the purpose of showing a waiver of the requirements of the policy in that respect. Such conversations, before the vacancy occurred, were inadmissible for the reason that such conversations or any agreement then made could have no effect, because there could be no waiver of a forfeiture until after the ground of forfeiture had occurred. That "a waiver is a voluntary relinquishment of a known right" is familiar law. Rogers v. Ins. Co., 155 Mo. App. 276; Patterson v. Ins. Co., 174 Mo. App. 37; Patterson v. Ins. Co., 164 Mo. App. 157. (3) The court erred in refusing to instruct a verdict for the defendant at the close of the evidence for the plaintiff, and at the close of all the evidence, and the verdict is contrary to the law and the evidence. Because it is undisputed that no actual notice of the facts sought to be charged to the principal was ever given to the latter and the notice to and knowledge of the agent cannot be, in law, imputed to the principal. Bank v. Nichols, 223 Ill. 41; Cowen v. Curran, 216 Ill. 598; Booker v. Booker, 208 Ill. 529. (a) The agent, to the knowledge of the insured, had an interest adverse to his principal. Bank v. Nichols, 223 Ill. 41;

Cowen v. Curran, 216 Ill. 598; Booker v. Booker, 208 Ill. 529; Safe Dep. Co. v. Lord, 67 N. J. Eq. 489; Bank v. Bridges, 39 Okla. 359; Bank v. Miller, 229 U. S. 517. (b) The agent was acting in collusion with and in the interest of the insured and against the interest of his principal. Scripture v. Ins. Co., 20 Tex. Civ. App. 153; Ins. Co. v. Minch, 53 N. Y. 150; Pennoyer v. Willis, 26 Ore. 1; Terry v. Cotton Co., 138 Ga. 656. (c) The agent was attempting to act as the agent of both parties without the knowledge or consent of his principal. Fiske v. Royal Exch. Assn. Co., 100 Mo. App. 545; Ins. Co. v. Ins. Co., 138 N. Y. 446; Ramspeck v. Patillo, 104 Ga. 772; Rockford Ins. Co. v. Winfield, 57 Kan. 576. (4) The court erred in instructing the jury in effect that if they found from the evidence that, prior to the institution of this suit, plaintiff paid all necessary corporation fees to the State of Colorado and obtained from the Secretary of State of Colorado a certificate of authority to do business in the said State, the fact that plaintiff had not paid said fees and obtained said certificate of authority prior to its alleged acquisition of title to the property in question, or prior to the issuance of the policy in suit, or prior to the fire, was immaterial. Respondent did not have title to the ground on which the insured buildings stood at the time of the issuance of the policy and, hence the policy is void. Overton v. Ins. Co., 79 Mo. App. 1; Roberts v. Ins. Co., 26 Mo. App. 92; Holloway v. Ins. Co., 48 Mo. App. 1; Brenner v. Ins. Co., 99 Mo. App. 718; Appendix, 3 Mo. App. 603; Ins. Co. v. Manning, 160 Fed. 382; Lane v. Parsons, Rich & Co., 97 Minn. 98. (5) The court erred in overruling defendant's motion to quash the writ and in refusing to sustain the defense, set forth in the first paragraph of defendant's answer, which defense was based upon the grounds that the Superintendent of the Insurance Department of the State of Missouri, upon whom service was at-

tempted to be made, was not authorized by the laws of Missouri to acknowledge or receive service of process for the defendant in this action and that Sec. 7042, R. S. 1909, is unconstitutional and void, because it denies to the defendant due process of law as guaranteed to it by the Constitution of Missouri and by section 1, article 14, Constitution of United States. Simon v. Southern Ry. Co., 236 U. S. 115; Old Wayne Life Assn. v. McDonough, 204 U. S. 22; Harkness v. Hyde, 98 U. S. 476; Southern Pac. Co. v. Denton, 146 U. S. 202; Goldey v. Morning News, 156 U. S. 518; Mechanical Appliance Co. v. Castleman, 215 U. S. 437; Cain v. Pub. Co., 232 U. S. 124.

*Percy Werner* and *Sutton & Huston, amici curiae.*

*Fauntleroy, Cullen & Hay, Fry & Rodgers* and *Fred D. Shaw* for respondent.

(1) The insurance company is estopped to claim a forfeiture of the policy for the reason the mill was shut down at the time of the fire and waived the necessity for permission for the shutting down of the mill to be in writing endorsed upon the policy. Hyman v. Ins. Co., 42 Colo. 156; Nixon v. Ins. Co., 2 Colo. App. 265; Thompson v. Ins. Co., 169 Mo. 12; Rissler v. Ins. Co., 150 Mo. 366; Huestess v. Ins. Co., 70 S. E. 406; Millis v. Ins. Co., 95 Mo. App. 211; Rudd v. Ins. Co., 120 Mo. App. 1. (2) Colorado has a like rule. There, as here, if the agent who wrote the policy knows of any fact existing which will cause a forfeiture of the policy and causes the assured to rely upon the fact that the policy will not be avoided, the insurance company is estopped to claim a forfeiture. Wich v. Ins. Co., 2 Colo. App. 488; Nixon v. Ins. Co., 2 Colo. App. 265; Hyman v. Ins. Co., 42 Colo. 162; Allis v. Ins. Co., 11 Colo. App. 264; Smith v. Ins. Co., 3 Colo. 422; Taylor v. Ins. Co., 14 Colo. 499; Strauss v.

Ins. Co., 42 Pac. 822; Donlon v. Ins. Co., 16 Colo. App. 416; Kittenring v. Assn., 22 Colo. 257; Strauss v. Ins. Co., 9 Colo. App. 386. (3) Kilpatrick & Hanley were the *alter ego* of the insurance company, and their knowledge of the fact that the factory was shut down and their assurances to Doepke that it was "all right" is a waiver. Thompson v. Ins. Co., 169 Mo. 25; Rissler v. Ins. Co., 150 Mo. 368; Shutts v. Ins. Co., 159 Mo. App. 441; Prentice v. Ins. Co., 77 N. Y. 487; Wooldridge v. Ins. Co., 69 Mo. App. 413; Hyman v. Ins. Co., 42 Colo. 156; Crouse v. Ins. Co., 79 Mich. 249; Andrus v. Ins. Co., 91 Minn. 358; Hart v. Ins. Co., 9 Wash. 620; Haight v. Ins. Co., 92 U. S. 51; Burnham v. Ins. Co., 63 Mo. App. 85; Montgomery v. Ins. Co., 80 Mo. App. 500; Ross Langford v. Ins. Co., 97 Mo. App. 79. (4) Policy is not void by reason of the plant being shut down, but only voidable, and the insurance company must cancel and return unearned premium. Not having done so, policy continues in force. Patterson v. Ins. Co., 176 Mo. App. 37; Flannigan v. Ins. Co., 46 N. Y. Supp. 687; Springfield Co. v. Ins. Co., 151 Mo. 98; Miller v. Ins. Co., 106 Mo. App. 211; Anthony v. Ins. Co., 48 Mo. App. 73; Brix v. Ins. Co., 171 Mo. App. 518; Smith v. Ins. Co., 3 Colo. 422. (5) Accepting premium after fire is a waiver of any violation of policy after the agent of the insurance company knew of it. Flannigan v. Ins. Co., 46 N. Y. Supp. 687; Raddin v. Ins. Co., 120 U. S. 195; Baker v. Ins. Co., 77 Fed. 550; Ins. Co. v. Wolff, 95 U. S. 326; Freeman v. Ins. Co., 47 S. W. 1025. (6) This mortgage did not render the policy void, only voidable at the election of the insurance company. It only suspended the policy while the mortgage was upon the property. As soon as the mortgage was paid the policy revived and was in full force and effect at the time of the fire. Brix v. Ins. Co., 171 Mo. App. 518; Obermeyer v. Ins. Co., 43 Mo. 579; Born v. Ins. Co., 110 Iowa, 379; Viele v. Ins. Co., 26 Iowa, 9. (7) The fact that the record did

not show a satisfaction of the mortgage is immaterial. If the mortgage was paid off, it ceased to be an encumbrance. Hawkes v. Ins. Co., 11 Wis. 188; Schreck v. Ins. Co., 27 Neb. 527; Vanlue v. Ins. Co., 26 N. E. 119; Born v. Ins. Co., 110 Iowa, 379. (8) Kilpatrick, the company's agent, who wrote the policy, knew that the mortgage was filed of record. Under such circumstances the insurance company waived its right to claim that the policy was void by reason of such mortgage. Hvman v. Ins. Co., 42 Colo. 156; Weinberger v. Ins. Co., 170 Mo. App. 270; Rissler v. Ins. Co., 150 Mo. 368; Laundry Co. v. Ins. Co., 151 Mo. 98; Thompson v. Ins. Co., 169 Mo. 28. (9) Notice to Kilpatrick, the company's agent, before the fire, that Peters held the $25,000 mortgage on the property was notice to the company. Where one agent represents several companies, what he knows is imputed to all. Hyman v. Ins. Co., 42 Colo. 156; Mesterman v. Ins. Co., 5 Wash. 524; Hamilton v. Ins. Co., 94 Mo. 355; Russell v. Ins. Co., 55 Mo. 585; Howitz v. Ins. Co., 40 Mo. 557. (10) Another defense which the insurance company urges is based upon its claim and assertion that Doepke, the president of the respondent, knew that Kilpatrick, the agent of the insurance company, was betraying his principal by withholding the information of the existence of the aforesaid mortgages, and of the fact that the plant was shut down and was idle. That therefore Doepke was "in collusion" with Kilpatrick to cheat and defraud the insurance company, and therefore Kilpatrick did not waive the forfeiture of the policy, which appellant claims existed, and for this reason a verdict should have been directed for the defendant. (a) Fraud is an affirmative defense which the insurance company should have set up in its answer by a statement of the facts which constitute fraud. There is no suggestion of any such defense in defendant's answer. Such defense must be specially pleaded. Hill v. Ins. Co., 127 S. W. 283; Harris v. Ins. Co., 248

Mo. 315; Cheevers v. Ins. Co., 83 N. Y. Supp. 728; Cade v. Ins. Co., 67 Pac. 603. (b) Any such doctrine, *ipso facto,* wipes out the whole principle of waiver or estoppel. Hyman v. Ins. Co., 42 Colo. 156; Spieser v. Ins. Co., 97 N. W. 209; Allis v. Ins. Co., 11 Colo. App. 264; Huestess v. Ins. Co., 70 S. E. 405. (c) If Doepke entertained no fraudulent intent in regard to these matters, the policy was not void. Cohen v. Ins. Co., 78 Atl. 911; Reynolds v. Ins. Co., 46 N. W. 659; Hill v. Ins. Co., 127 S. W. 290; Prentiss v. Ins. Co., 77 N. Y. 487; Rissler v. Ins. Co., 150 Mo. 366. (11) Upon the return day of the writ of summons, the insurance company duly appeared in this case, and filed its written motion to "dismiss the cause," and set out numerous reasons therefor. This motion having been overruled by the trial court, appellant herein thereupon applied to the Supreme Court of Missouri for a writ of prohibition against respondent. An alternative writ of prohibition having been issued, the whole matter came up for decision in the case of State ex rel. v. Barnett, 239 Mo. 193. This court held the service good and that the circuit court of Audrain County had jurisdiction. Therefore the whole question of proper service and jurisdiction of the Audrain Circuit Court has been settled by the decision in that case and is *res adjudicata.* State ex rel. v. Barnett, 239 Mo. 193; Chapman v. Railroad, 146 Mo. 494; Bridge Co. v. Stone, 194 Mo. 184; Bank v. Taylor, 62 Mo. 338; Bank v. Donnell, 195 Mo. 591. Defendant, at a subsequent term of the court, by "leave of court had and obtained," filed its answer herein to the merits. This was a general appearance, and waived all questions of jurisdiction. Outside of appellant appearing, generally when it filed its motion to quash the writ and "dismiss the cause," it had lost its right, as a matter of right, to file any answer at the subsequent term, and could only then file its answer, as it did, as a matter of grace. Asking the court for and obtaining "leave" to file its

answer, when its motion to "dismiss" had been over-ruled, appellant voluntarily submitted itself to the jurisdiction of the court, when it asked and obtained "leave" to file its answer to the merits. Pry v. Railroad, 73 Mo. 124; 3 Cyc. 507; Tennison v. Perryman, 49 Mo. 110; Cement Co. v. Gas Co., 255 Mo. 3; Forgey v. Co., 140 Mo. App. 605; Bank v. Railroad, 119 Mo. App. 10; Baisley v. Baisley, 113 Mo. 544.

WOODSON, C. J.—This is a suit instituted June 6, 1911, in the circuit court of Audrain County, Missouri, by the plaintiff against the defendant, to recover the sum of $2,500, alleged to be due the former under the terms of a policy of insurance dated October 5, 1909, insuring certain property in the State of Colorado against damage and loss by fire.

A trial was had which resulted in a judgment for the plaintiff, and the defendant, in proper time and in due form, appealed the cause to this court.

We will briefly state the pleadings.

The petition was in due form, charging that the plaintiff was a corporation duly organized under the laws of Arizona; that at all the times therein stated the defendant was a foreign insurance company, organized under the laws of Pennsylvania, and was duly licensed under the laws of this State to carry on a general fire insurance business herein, and was at all of said times carrying on said business herein.

That the plaintiff on October 5, 1909, was the absolute owner of the property insured, situated in the State of Colorado; and that upon that date the defendant issued the policy mentioned, insuring the same against loss or damage by fire for a period of one year, for a consideration of————dollars.

That on August 13, 1910, said property was struck by lightning and destroyed and damaged to the amount of $134,000; and that proofs of loss were duly given.

The policy was a regular standard policy, containing the usual terms and conditions.

At the September term, 1911, of said court the defendant filed in the cause a motion to quash the summons and the return of service thereof made by the sheriff of Cole County on the Superintendent of Insurance of this State, which was by the court overruled.

Thereupon the cause was passed to await the decision of this court in the case of State ex rel. v. Barnett, 239 Mo. 193.

After that case had been decided, the defendant, after leave of court had been obtained, filed an answer, which is substantially as follows:

The answer alleges the service was had upon the Superintendent of Insurance; that the court acquired no jurisdiction over defendant, because neither party was a resident of Missouri and the action accrued in Colorado, and therefore section 7042, Revised Statutes 1909, did not apply; that said section is unconstitutional and void, because in violation of section 30, article 2, of the Missouri Constitution, and section 1, article 14, of the Federal Constitution; also that section 7042 was enacted in 1885, Laws of Missouri 1885, page 183, in violation of section 28 and of section 34, of article 4, of the Missouri Constitution, and therefore void, so that the service of process gave no jurisdiction over the defendant.

That in violation of the terms of the policy the property had been permitted to remain idle more than thirty days without the written permission of the defendant; also that in violation thereof, said property had been encumbered by the execution of a mortgage thereon, to secure the sum of $25,000, without defendant's knowledge or consent.

Further, that the item "gold in process" mentioned in the policy was not destroyed; that contrary to the terms of the policy, the property insured was not in operation at the time of the fire, nor for more than

six months prior thereto; that the property was mortgaged at the time of the issuance of the policy and at the time of the fire without the consent of the defendant; and that the plaintiff was guilty of fraud and false swearing in claiming in its proofs of loss that "gold in process" to the value of $9,000 was destroyed; that the plaintiff was not the sole and unconditional owner of the property insured, nor did it own the property in fee simple, because it had not been licensed to do business in Colorado under the provisions of section 904 and section 910, Revised Statutes of Colorado 1908, and therefore it did not have title to the property, pleading decisions of Colorado to this effect; and that the defendant had tendered to the plaintiff all the premium with interest thereon.

The reply denied the unconstitutionality of section 7042; admitted that the building was not in operation as charged by defendant, but pleaded waiver of such condition of the policy; that the mortgage on the property was paid off before the insurance was taken out; denied making false statements regarding "gold in process;" denied any information sufficient to form a belief as to whether section 910, Revised Statutes of Colorado 1908, and cases cited by defendant, were ever in force or rendered by the court; alleged that it paid taxes upon the property prior to the fire; pleaded that the courts of Colorado had decided that after a foreign corporation has paid a license fee, it may sue in the courts of Colorado; and pleaded that the doctrine of waiver was the law of Colorado.

The policy in suit was dated and delivered along with the other policies, amounting to about $50,000, to a Mr. Doepke, president of the respondent company, on or about October 5, 1909, and covers the insured property for one year thereafter. The insured property was destroyed by fire on August 13, 1910, and this action was instituted in the circuit court of Audrain County on June 6, 1911; summons being served

upon Frank Blake, Superintendent of the Insurance Department of the State of Missouri, on June 7, 1911.

We will first state the undisputed facts of the case; and then briefly state what the evidence tended to show regarding those that were disputed, viz.:

The plaintiff herein is a corporation duly organized under the laws of the State of Arizona. The defendant is a fire insurance corporation duly organized under the laws of the State of Pennsylvania, and at all times mentioned in this suit and at the time this suit was commenced was, and ever since had been, duly licensed as a foreign insurance company to do business in the State of Missouri.

On October 5, 1909, the defendant duly made and delivered its policy and contract of insurance to plaintiff herein at Cripple Creek, Colorado, where it had a general insurance agency, which was represented by Kilpatrick & Hanley. In that section of Colorado the insurance company had no other representative, and Kilpatrick & Hanley had authority to make contracts of insurance. At the time the insurance was effected plaintiff owned certain valuable mining property and was engaged in the building of a large smelter for the purpose of smelting gold from its mines, which were located two or three miles out of Cripple Creek, Teller County, Colorado. On October 5, 1909, for and in consideration of a premium of $74.12, defendant, through Kilpatrick & Hanley, its general agents at Cripple Creek, did issue its policy and contract of insurance to plaintiff, whereby it was insured against all loss or damage by fire for a period of one year from October 5, 1909, to October 5, 1910, to the smelter, buildings, machinery, etc., which went to make up the smelter, which are described in the policy and which were owned by plaintiff, and which was finished and ready for use the day it was destroyed by lightning. Lightning struck the buildings August 13, 1910, and they were all destroyed by fire resulting therefrom.

The evidence shows that the insured buildings and property, which were totally destroyed by fire, were worth $134,000, and that the loss and damage occasioned thereby was about that sum. There was a large amount of other insurance upon the property besides that which was issued by appellant herein, amounting to about $50,000. The insurance premiums were not paid in cash when the policies were delivered, but a credit was given to plaintiff therefor by Kilpatrick & Hanley, and prior to the fire plaintiff paid $500 to Kilpatrick & Hanley on the premiums, which amounted to between $1,500 and $1,600.

August 15, 1910, two days after the fire, Kilpatrick and Hanley sent a telegram from Cripple Creek, Colorado, to J. F. W. Doepke, the president of respondent, and one who was in sole charge of respondent's business, and the only one with whom Kilpatrick & Hanley ever had any business, requesting that respondent send the balance of the premiums, which amounted to $1,124. The telegram is as follows:

Cripple Creek, Aug. 15, 1910.

J. F. W. Doepke,
    Mercantile Building, St. Louis, Missouri.
    Mail draft for your protection eleven hundred and twenty-four dollars,

KILPATRICK & HANLEY.

Immediately upon receipt of that telegram Deopke sent a draft to Kilpatrick & Hanley for said sum of $1,124, which made payment in full of all the premiums upon all the policies, including the policy of defendant herein, which Kilpatrick & Hanley had issued upon the property in question.

At the time the insurance was effected and at the time the fire occurred the plaintiff had not received a license to do business in the State of Colorado from that State, although it had for a long time past owned the mining property in question and had been engaged

in the erection of the smelter and buildings which were insured and destroyed by fire and had been regularly paying taxes to the State of Colorado upon the property in question.

After the fire the plaintiff gave due notice of the fire to defendant and made due proofs of loss through the Kilpatrick & Hanley agency, the agents of the defendant.

The policy provided that the property should not be idle for more than thirty days without the written permission of defendant. The evidence for plaintiff tended to show that at the time the policy was issued and delivered to plaintiff, its president informed the agents of defendant that because of the scarcity of fuel and the difficulty in delivering it at the plant, a tramway might have to be constructed, and on account of those matters the smelter might be idle at times for periods of more than thirty days at a time, and asked them what he should do in the premises. That in reply thereto said agents stated to him that that would be all right; and thereupon he accepted the policies and paid the premium as previously stated. That thereafter, and before the fire occurred, the same inquiry had been addressed a number of times to said agents, to which they made substantially the same answer, as that before stated. This was corroborated by Kilpatrick, one of defendant's agents and witnesses.

That when it was found out that the business would have to shut down, Doepke, the president of the plaintiff company, went to defendant's agents and informed them that he was unable to procure the necessary fuel with which to operate the smelter and would have to close down on that account, and asked them what was necessary for him to do in regard to the insurance, as he did not want any question raised as to its validity. This was on January 10, 1910; and Kilpatrick said to him, "All right; go ahead."

That each and every month thereafter said agents were notified of the fact that the mill was idle, and inquiry made of them as to what should be done. That at no time did they make "any objections to it." Kilpatrick, one of defendant's agents says that was true, and that he made no objection, "because I expected he (Doepke) would start up in a short time, and I didn't want to lose the business and premiums."

The policy prohibited encumbrances upon the property; and at the time of the issuance of the policy or shortly thereafter, the company executed to one Peters a mortgage on the property to secure the sum of $25,000.

The undisputed evidence shows that in "June, 1910," Doepke informed Kilpatrick & Hanley about "this mortgage" and the agents made no objection "whatever" to it. They did not, upon being informed of the existence of this mortgage, cancel the policy or offer to return any of the premiums. Under date of July 11 and 21, respectively, 1910, Kilpatrick & Hanley wrote to plaintiff and cancelled certain other policies which they had issued to it upon this property for the reason that the Peters mortgage of $25,000 was upon the property, and in the place of the canceled policies wrote other policies to take the place of the cancelled ones. On July 10, 1910, more than a month before the fire, the Peters mortgage was paid off and satisfied in full. A second mortgage on the property is mentioned in the evidence, but not set out, and the amount it was given to secure is not made clear, but whatever was the amount, it was fully paid and satisfied June 11, 1908, more that two years before the fire. The note had been "surrendered up and canceled." The testimony in regard to both of these mortgages having been fully paid and released before the fire is proven by the uncontradicted testimony in this case.

It is conceded that the plaintiff company had not complied with the laws of Colorado, and secured a

license to do business therein, at the time the policy in question was issued.

Such additional facts as may be necessary for a proper disposition of the case will be stated in the opinion.

I. Counsel for the appellant (defendant) assign many grounds for a reversal of the judgment of the circuit court; a number of them are constitutional questions.

We will dispose of the latter first, because if appellant's position is sound in that regard, then there will be no necessity for a determination of the former.

Counsel for appellant state their position in the following language:

"The court erred in overruling defendant's motion to quash the writ and in refusing to sustain the defense, set forth in the first paragraph of defendant's answer, which defense was based upon the grounds that the Superintendent of the Insurance Department of the State of Missouri, upon whom service was attempted to be made, was not authorized by the laws of the State of Missouri to acknowledge or receive service of process for the defendant in this action and that section 7042, Revised Statutes 1909, is unconstitutional and void because it denies to the defendant due process of law as guaranteed to it by the Constitution of Missouri and by section 1, article 14, of the Constitution of the United States."

*Constitutional Right.*

While counsel state their general proposition in the language just quoted, yet when they come to brief and argue the same they subdivide it, at least by necessary implication, into five propositions, which, if I correctly understand them, are as follows:

First: That said section 7042, Revised Statutes 1909, was only designed to provide for service of pro-

cess issued in suits against foreign insurance companies doing business in this State founded upon contracts of. insurance made in this State, and not 'elsewhere.

. · Second: That, if said section 7042 was designed to authorize service of process issued in suits against foreign insurance companies doing business in this State under authority of the statute properly granted, growing out of contracts of insurance made in another state or country, then it is unconstitutional, null and void under both the State and Federal Constitutions, as stated by counsel in their general proposition before quoted..

Third: That the Legislature has no constitutional power to enact laws conferring jurisdiction.upon the courts of this State to try suits against foreign insurance companies based' upon contracts of insurance executed in another State or country.

Fourth: That said section 7042 was not designed to provide for service of process issued in suits against foreign insurance companies doing business in this State unlawfully, that is, without permission of the State, founded upon contracts of insurance made in this State; but if that was the design then the section is unconstitutional for the reasons before stated. ·

. Fifth: That, if said section 7042 was designed to authorize service of process in suits against foreign insurance companies doing business in this State based' upon a contract of insurance made in another State with or without a license from that State, then it is. unconstitutional, null and void, for the reasons before stated.

Regarding the first: While this question is embraced within the general proposition before mentioned, yet in fact, it presents no constitutional question whatever, but simply involves the meaning of section 7042.

A foreword: Because of the misapprehension, in: my opinion, of counsel for appellant, and some of my

learned associates regarding the meaning of section 7042, Revised Statutes 1909, and its

constitutionality under the ruling of the Supreme Court of the United States in the cases of Old Wayne Mutual Life Assn. v. McDonough, 204 U. S. 8, l. c. 22, and Simon v. Southern Railway Company, 236 U. S. 115, and because of the far-reaching, detrimental and injurious effect such a rule would have upon the jurisprudence of this and the other States of the Union and upon the speedy and orderly administration of justice, I feel justified in devoting more time and space to the case than would otherwise be necessary. This may, and doubtless will, lead to more or less repetition, and some illustrations to show the application of the principles of law to the facts; and consequently a prolongation of the opinion.

Returning to that statute: Every phase of this statute save its constitutionality was carefully considered and determined by this court in the case of State ex rel. v. Grimm, 239 Mo. 135, l. c. 159. Since, however, its meaning has again been questioned and its constitutionality assailed I will add some additional views as to its meaning and then carefully consider its constitutionality.

In order to grasp the real meaning of this statute we should have it before us. It reads as follows:

"Sec. 7042. Any insurance company not incorporated by or organized under the laws of this State, desiring to transact any business by any agent or agents in this State, shall first file with the Superintendent of the Insurance Department, a written instrument or power of attorney, duly signed and sealed, appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record, justice of the peace, or other inferior court, and upon whom such process may be served for and in behalf of such company, in all proceedings that may

be instituted against such company, in any court of this State or in any court of the United States in this State, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other State. Service of process as aforesaid, issued by any such court, as aforesaid, upon the superintendent, shall be valid and binding and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this State. . . . Every such instrument of appointment executed by such company shall be attested by the seal of such company, and shall recite the whole of this section, and shall be accompanied by a copy of a resolution of the board of directors or trustees of such company similarly attested, showing that the president and secretary, or other chief officers of such company, are authorized to execute such instrument in behalf of the company; and if any such company shall fail, neglect or refuse to appoint and maintain, within the State, an attorney or agent, in the manner hereinbefore described, it shall forfeit the right to do or continue business in this State.''

This section should be read with sections 7040 and 7041, Revised Statutes 1909, for the former prohibits all foreign insurance companies from doing business in this State without first taking out a license, etc., and the second prescribes the mode of procuring such license, etc.

This statute was first enacted in 1845, and was carried into the Revised Statutes of 1845 as section 3, on page 610.

This statute was amended in 1885 (Laws 1885, p. 183, sec. 1) so as to read as we now have it in said section 7042, and it was first carried into the Revised Statutes of 1889, as section 5912.

. . ˙ On May 11, 1899, the appellant filed with the Superintendent of Insurance an instrument in the nature of a consent and appointment in compliance with the requirements of the Revised Statutes 1889, stating the desire of the appellant to transact business in the State of Missouri pursuant to the laws thereof, setting forth fully said section 5912.

And thereupon and under that authority the appellant has continued to the present time to transact . its said business in this State under said license.

This places before us clearly the law under which the appellant came into the State to transact an insurance business, and its status before the law of the State, including its agreement for service of legal process upon it through the Superintendent of Insurance of this State.

It is one of the elementary rules of statutory construction that in trying to ascertain the meaning of a statute or an amendment thereto, we should first look at the status of the subject-matter of the contemplated legislation as well as the law or lack of law governing the same. If there is no law upon the subject, and some evil exists in connection therewith, which the Legislature desires to remedy, then a new statute must be enacted in order to remedy the evil; but if there is an existing law governing the matter, statutory or common law, which is defective or insufficient to properly govern the same and in consequence thereof evil lurks in or about the same, which should be abolished, then that end is generally accomplished by an enactment supplementing the deficient statute or the insufficiency of the common law, as the case may be. [Dowdy v. Wamble, 110 Mo. l. c. 283; Mooney v. Buford & George Mfg. Co., 72 Fed. l. c. 36.]

Prior to 1845 the insurance business transacted in this State, both life and fire, was comparatively small,

and principally done by foreign companies. For that reason there had been but little legislation needed or enacted upon the subject; no means were provided by which service of process could be had against such a company issuing policies in this State. This led to great injustice and hardship in many cases, because when a loss occurred the insured was compelled to settle with the company upon its own terms or go to the State of its incorporation and sue it for the sum due on the policy. This led to much loss of time, trouble and expense on the part of the policy-holders in going to and from the place of trial, to say nothing of the cost and expense of the litigation.

This injustice appealed to the Legislature, and in 1845, for the first time in so far as I have been able to ascertain, it undertook by legislation to remedy that injustice in so far as concerned contracts of insurance made in this State, and thereby authorized suit to be brought on such policies in the courts of this State, and provided for service of process against any such company in the manner stated therein, which will presently be copied.

As previously stated, the first legislation in this State which took any definite form looking to a remedy of the injustice and hardships mentioned, was enacted in 1845, which is chapter 87, Revised Statutes 1845.

While this entire chapter should be considered in connection herewith, as throwing light upon the general design the Legislature had in mind, yet space compels me to confine my observations to section 3, page 610, Revised Statutes 1845, thereof. It reads as follows: .

"The agent or agents of any such company aforesaid, shall also be required before commencing business, or, in case he or they have already commenced business, then, on or before the first day of July, eighteen hundred and forty-five, to furnish to the clerk of

the county court, to be placed on the records of said court, a resolution of the board of directors of the company for which he or they may propose to act, or are already acting, duly authenticated, authorizing any citizen or person residing in the State of Missouri, or elsewhere, having a claim against any such company aforesaid, growing out of a contract of insurance, made with the agent or agents of any such company aforesaid, doing business in this State, to sue for the same in any court in said State having competent jurisdiction; and further authorizing service of process on said agent or agents to be sufficiently binding on said company to abide the issue of said suit, and that such service shall authorize judgments in the same manner that judgments are taken against private individuals; and it is hereby enacted, that the service of process on the said agent or agents, in any action commenced against such company, shall be deemed a service upon the company, and shall authorize the same proceedings as in case of other actions at law; the process shall be served and returned in the same manner, as if the action were against the agent or agents personally.''

In addition to what was held by this court in the case of State ex rel. v. Grimm, 239 Mo. 135, l. c. 159 to 171, as to the meaning of section 7042, I have this to say: That section 3 of the Act of 1845 required all foreign insurance companies desiring to do business in this State to first place on record a resolution of the board of directors, ''authorizing any citizen or person residing in the State of Missouri or elsewhere, having a claim against any such company aforesaid *growing out of a contract of insurance, made with the agent or agents of any such company aforesaid doing business in this State to sue for the same in any court in said State.*'' 

The italics are ours, and are made for the purpose of accentuating the fact that this original statute did, as contended for by counsel for the petitioner, provide

and was designed to limit the service of process in suits against such companies growing out of contracts of insurance *made by them in this State.*

This statute was amended by an Act of 1855 (R. S. 1855, p. 885, sec. 1) which also required a resolution of the board of directors of such foreign insurance company "authorizing any person having a claim against such company *growing out of a contract of insurance made in this State* with the agent or agents thereof doing business in this State *to sue such company* for the same in any court of this State."

This amendment also limited the service of process in suits against such company to actions upon contracts of insurance made in this State.

This statute appears as section 3, page 402, General Statutes 1865, and concludes as follows: "And the service of process on such agent or agents as aforesaid shall be deemed a service upon the company sued, and shall authorize the same proceedings in suit as in the case of other suits in such court," etc.

And the following amendment was added (Laws 1869, page 38, section 31, amended) by section 6013, Revised Statutes 1879:

"Service of process as aforesaid issued by any such court, as aforesaid, upon any such attorney appointed by the company or by the superintendent, as aforesaid, shall be valid and binding and be deemed personal service upon such company so long as it shall have any policies or liabilities outstanding in this State," etc.

The latter amendment was designed to limit the time of service of process upon the company "*to such time as it has policies or liabilities outstanding in this State,*" etc.

As time passed the insurance business grew by leaps and bounds, in proportion to the general business of the country, and policies of insurance were issued by the thousands in and out of this State by for-

eign corporations on property located herein and elsewhere, and in order to meet the new order of things, additional legislation was necessary.

Under this new order of things there was no provision contained in the Act of 1845 or in any of the amendments thereof prior to 1885, by which a resident or a non-resident of this State could sue a foreign insurance company doing business herein, upon a policy of insurance issued by it out of this State, insuring property located in this State or elsewhere, and in order to meet that condition section 3 of the Act of 1845, as amended, as previously stated, was further amended by the Act of 1885. [Laws 1885, p. 183.]

After the various amendments mentioned had been enacted, this statute, as before stated, passed into the revision of 1889, and is section 5912, and into the revision of 1909, and is now section 7042.

Section 7042 was in full force and effect when appellant applied for a license to do business in this State, and on the 11th day of May, 1899, it fully complied with the requirements of that statute, and among other things filed with the Superintendent of Insurance of the State the instrument mentioned in said section, appointing him its agent to accept service of such process as therein provided for as might be issued against it by any court of proper authority in this State, and consented that service had upon him as such should be legal and personally binding upon it in the same manner as other proceedings had in said court.

By the amendment of 1885, which is now section 7042, the Legislature broadened and extended the scope and operation of the Act of 1845, and the various amendments thereto, by striking out the words which limited it to suits brought on contracts of insurance *made in this State,* and by inserting in lieu thereof, the provision requiring all such companies to appoint the Superintendent of Insurance of this State as their agent to accept service of process for them and to ac-

knowledge receipt of the same when "issued from any court of record, justice of the peace or other inferior court, and upon whom such process may be served for and in behalf of such company *in all proceedings that may be instituted against such company in any court of this State* or in any court of the United States in this State, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other State," and that service of process as aforesaid issued by any such court as aforesaid upon the Superintendent of Insurance "shall be valid and binding and be deemed personal service upon such company so long as it shall have any policies or liabilities outstanding," etc.

The omission from this statute of the limitation of the process of the courts of this State to causes of action arising out of contracts of insurance made in this State, as originally enacted, and enlarging or extending the process of the courts to *"all proceedings that might be instituted against such company in any court of this State,"* clearly authorized the Superintendent of Insurance to acknowledge the receipt and service of process for any such company in any and all transitory causes of action that might be brought by anyone against it in the courts of this State, except those mentioned in section 7044, Revised Statutes 1909, regardless of place where the contract of insurance was entered into; and the language of this amendment is sufficiently comprehensive to embrace residents and non-residents of the State at the time of the issuance of the policy and at the time of the institution of the suit thereon. This it seems to me is too plain for argument, and to attempt to do so would but confuse the plain meaning of the language of the amendment of 1885, and the steadfast purpose the Legislature had in mind when the amendment was enacted. Nor does the amendment of 1869, which in substance provides

that the authority of the Superintendent of Insurance to acknowledge and accept service for such company shall continue "so long as it shall have any policies or liabilities outstanding in this State," militate in the least against the construction heretofore placed upon this section of the statutes, for the obvious reason that said amendment is a limitation upon the duration of the authority of the Superintendent of Insurance to act for such company, and not a limitation upon the character of suits that may be brought and prosecuted in the courts of this State under such a service of process.

This court in the case of Dowdy v. Wamble, 110 Mo. l. c. 283, in discussing this rule, said:

"There are few guides to construction more useful than that which directs attention to the prior condition of the law to aid in determining the full legislative meaning of any statutory change thereof."

In discussing the same question the United States Court of Appeals for the Seventh Circuit, in the case of Mooney v. Buford & George Mfg. Co., 72 Fed. l. c. 36, said:

"The earlier provisions quoted from the Indiana Code and statutes expressly limit the right to process against foreign corporations to suits arising out of transactions had in this State, and, from the mere omission of that limitation in the latter enactments, there would arise a just inference that an enlargement of jurisdiction in this particular was intended; but the broad terms employed in the Act of 1883, 'process in any suit against such company may be served,' etc., need not to be helped out by inference. . . . There is no reason to be found in the context or in the course of previous legislation in the State or in considerations of policy for believing that in the enactment before us the word was intended to be used in a more restricted sense."

I am therefore clearly of the opinion that said section 7042 embraces the policy mentioned in this case and authorized the holders thereof to sue thereon in the circuit court of Audrain County.

II. This brings us to the consideration of the constitutional questions presented.

We will try to discuss these questions in the order stated, but they are so closely related and interdependent that what is said of one may necessarily apply to others; and for the purpose of preventing confusions in discussing the constitutionality of said section 7042, it should be borne in mind that it does not apply to suits arising out of contracts of insurance written in this State, by a foreign insurance company, without a license from it to do business herein; all such suits are governed by section 7044. *Nor do either of those sections authorize service of process* in suits brought in the courts of this State against foreign insurance companies doing business herein *without a license from the State to so do,* based *upon a policy of insurance issued thereby in another state or country.* That question will be considered in Paragraph Five of this opinion.

**Due Process and Equal Protection.**

In discussing sections 7042 and 7044, even though our language may be general, yet what is said of the one is not intended to apply to the suits mentioned in the other.

Regarding the first constitutional question presented, which is the second subdivision of appellant's general contention, before quoted: In brief, counsel for appellant contend that section 7042 is violative of section 30 of article 2 of the Constitution of Missouri and section 1 of the Fourteenth Amendment of the Constitution of the United States, because: first, it does not afford appellant due process of law; and, second, because the Legislature of this State has no power to authorize suits to be brought in the courts of this State

for a breach of a contract of insurance not made in this State.

These two propositions are so closely and inseparably connected that we will discuss them together.

Does said section 7042 provide for due process of law, and was the appellant served with due process of law?

The respondent answers this question in the affirmative, while the appellant answers it in the negative.

The latter bases its answer upon the authority of the dissenting opinion filed in the Grimm case, supra, and the opinion of the Supreme Court of the United States in the case of Simon v. Southern Ry. Co., 236 U. S. 115.

By reading the dissenting opinion in the Grimm case it will be seen that it was predicated upon the idea that said section 7042 only applied to service of process in cases involving controversies growing out of insurance contracts *made in this State* with a foreign insurance company doing business herein under a license duly issued to it; and therefore service of process upon such a company, under that section of the statutes conferred no jurisdiction upon the courts of this State to try a case arising out of such a contract made in some other state or country.

This contention of the petitioner, in my opinion, is a clear misconception of the meaning of said section 7042, and of the class of cases to which it applies.

In addition to what was said upon this question in the Grimm case I wish to say that in the light of the history of this statute, as shown by the various amendments made thereto from time to time and the evils the Legislature intended thereby to remedy, there is no longer left a shadow of doubt but what it was the design of the Legislature, by enacting section 7042, to provide for process in suits involving controversies arising out of all lawful contracts of insurance issued

by such companies outside of this State as well as those made in it, except those mentioned in section 7044 and the classes of cases mentioned in the case of Old Wayne Life Association v. McDonough, 204 U. S. 1. c. 22, which will be carefully considered later. That being unquestionably true, then if that section is constitutional, clearly the petitioner here was served with due process of law within the meaning of the due process clauses of the State and Federal constitutions.

The Grimm case, therefore, has no bearing whatever upon the constitutional questions presented.

While there is some language used in the opinion of the court in the case of Simon v. Southern Ry. Co., supra, which seems to lend support to the contention of counsel for the petitioner, yet when read in the light of the facts of that case and the statute the court had under consideration, both of which are totally different from those presented by this record, it does not, in my opinion, bear the construction placed upon it by counsel for the petitioner, nor is it *applicable or controlling* in the case at bar. In order to get a clear comprehension of that case I will briefly state the principal facts thereof, as they appear in the statement of them, as made by that court.

In that case the petition charged that the plaintiff was a resident of Louisiana and the defendant was a Virginia railroad corporation doing business in the former State; that the plaintiff purchased a ticket from defendant, from Salem, Alabama, to Meridian, Mississippi, and that while traveling over the lines of the defendant in Alabama, through its negligence, a collision occurred in which the plaintiff was injured. The suit was brought in the district court for the Parish of Orleans in the State of Louisiana, and the petition alleged several items of damages, aggregating something over $13,000.

At all the times mentioned there was in force in the State of Louisiana, an act of the Legislature known

as Act 54 (Louisiana Acts 1904, p. 133), two sections of which are as follows:

Section 1: "That it shall be the duty of every foreign corporation doing any business in this State to file in the office of the Secretary of State a written declaration setting forth and containing the place or locality of its domicile, the place or places in the State where it is doing business and the name of its agent or agents or other officers in this State upon whom process may be served."

Section 2: "Whenever any such corporation shall do any business of any nature whatever in this State without having complied with the requirements of section one of this act, it may be sued for any legal cause of action in any parish of the State where it may do business, and service of process in such suit may be made upon the Secretary of State the same and with the same validity as if such corporation had been personally served."

Having availed himself of these statutes the plaintiff had a summons issued for the defendant, directed to "the Southern Railway Company, through Hon. John T. Michel, Secretary of State of Louisiana, New Orleans," and required the defendant to answer in ten days.

The deputy sheriff on December 3, 1904, served the citation and petition "on the within named Southern Railway Co. in the Parish of East Baton Rouge, State of Louisiana, by personal service on E. J. McGivney, Asst. Secy. of State, Jno. T. Michel, Secy. of State, being absent at the time of service." The Assistant Secretary of State filed the citation and petition in his office.

No notice, however, was given to the defendant by the Secretary of State of the service of the citation upon him or of the fact that suit had been brought against it. It therefore made no appearance in the suit, and on January 10, 1905, a judgment by default

was entered against the defendant; and thereafter on January 20th, upon evidence introduced by the plaintiff, the court rendered a judgment for him for the full amount sued for.

On February 6, 1905, the defendant, having heard of the rendition of the judgment against it, filed a bill in the circuit court of the United States for the District of Louisiana, asking that Simon be perpetually enjoined from enforcing said judgment. The bill of the railway company asking for the injunction charged fraud on the part of Simon in procuring the judgment.

Proceeding, that court says:

"The bill further alleged that the Southern Railway was not doing business in the State of Louisiana; that the service upon the Secretary or Assistant Secretary of State was not a citation upon the railway company and was null and void for the purpose of bringing it under the jurisdiction of the Civil District Court; that any judgment rendered upon such attempted 'citation would be, if rendered without appearance of the defendant, a judgment without due process of law, and consequently, in violation of the Constitution;' that the railway company had never received the citation issued in the suit, nor was it advised, nor had it any knowledge of the pendency of said proceedings until after the rendition of the judgment; that the verdict of the jury having been rendered upon false testimony and without notice, it would be against good conscience to allow the judgment thereon to be enforced against the railway company, which has no remedy at law in the premises and has a complete meritorious defense to the claim on which the judgment is based; that by fraud and accident, unmixed with its own negligence, the railway company has been prevented from making such defense."

The cause was by the circuit court referred to a master to hear the evidence and to report his conclusions of law and facts. He found that the railway was

not doing business in Louisiana in the sense of the statute; that the judgment was not fraudulent, but was void because service upon the Assistant Secretary of State was not the "service upon the Secretary of State" required by the statute.

The circuit court found that the railway company was doing business in New Orleans; but ruled that Act 54 did not provide for service on the Assistant Secretary of State, and hence that the judgment by default in the State court was void for want of jurisdiction of the person of the defendant.

The circuit court did not consider the question of fraud, but, as before stated, held that the State judgment was void because the Louisiana statute providing for service on foreign corporations was unconstitutional; and it entered a permanent injunction against said Simon, as prayed for in the bill. From that judgment Simon appealed the case to the Supreme Court of the United States.

Before taking up the Simon-Railway case, it should be borne in mind that section 1 of the Louisiana statute before quoted was not before the Supreme Court of the United States for consideration, because the service of summons in that case was had, if at-all, upon the railway company, under the authority of section 2 of that act, and was served upon the Assistant Secretary of State instead of the Secretary, as the act required. This is made clear and set at rest by the following language quoted from page 129 of opinion of Mr. Justice LAMAR, who delivered the opinion in that case:

"The broader the ground of the decision here, the more likelihood there will be of affecting judgments held by persons not before the court. We therefore purposely refrain from passing upon either of the propositions decided in the courts below, and without discussing the right to sue on a transitory cause of action and serve the same on an *agent voluntarily appointed*

by the foreign corporation, we put the decision here on the special fact, relied on in the court below, that in this case the cause of action arose within the State of Alabama, and the suit therefor, in the Louisiana court, was served on an agent designated by a Louisiana statute.

"Subject to exceptions, not material here, *every State has the undoubted right to provide for service of process upon any foreign corporations doing business therein; to require such companies to name agents upon whom service may be made; and also to provide that in case of the company's failure to appoint such agent, service, in proper cases may be made upon an officer designated by law.* [Mutual Reserve Assn. v. Phelps, 190 U. S. 147; Mutual Life Ins. Co. v. Spratley, 172 U. S. 602.]"

After thus stating the facts of the Simon-Railway case, copying the statute under which service of process in that case was attempted to be had, and what the court in that case *did not consider or decide,* we will now review what it *did decide therein.*

Following immediately the quotation last made from that opinion, the Supreme Court of the United States held that the second section of the Statute of Louisiana, the one under which the pretended service was had, was unconstitutional, in the following language:

"But this power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction of the State enacting the law. Otherwise, claims on contracts wherever made and suits for torts wherever committed might by virtue of such compulsory statute be drawn to the jurisdiction of any State in which the foreign corporation might at any time be carrying on business. The manifest inconvenience and hardship arising from such extra-territorial extension of jurisdiction, by virtue of the power

to make such compulsory appointments, could not defeat the power if in law it could be rightfully exerted. But these possible inconveniences serve to emphasize the importance of the principle laid down in Old Wayne Life Association v. McDonough, 204 U. S. 22, that the statutory consent of a foreign corporation to be sued does not extend to causes of action arising in other States.

"In that case the Pennsylvania statute, as a condition of their doing business in the State, required foreign corporations to file a written stipulation agreeing 'that any legal process affecting the company served on the Insurance Commissioner . . . shall have the same effect as if served personally on the company within this State.' The Old Wayne Life Association having executed and delivered, in Indiana, a policy of insurance on the life of a citizen of Pennsylvania was sued thereon in Pennsylvania. The declaration averred that the company 'has been doing business in the State of Pennsylvania, issuing policies of life insurance to numerous and divers residents of said county and State,' and service was made on the Commissioner of Insurance. The association made no appearance and a judgment by default was entered against it. Thereafter suit on the judgment was brought in Indiana. The plaintiff there introduced the record of the Pennsylvania proceedings and claimed that, under the full-faith-and-credit clause of the Constitution, he was entitled to recover thereon in the Indiana court. There was no proof as to the company having done any business in the State of Pennsylvania, except the legal presumption arising from the statements in the declaration as to soliciting insurance in that State. This court said:

"'But even if it be assumed that the company was engaged in some business in Pennsylvania at the time the contract in question was made, it cannot be held that the company agreed that service of process upon

the Insurance Commissioner of that Commonwealth would alone be sufficient to bring it into court in respect of all business transacted by it, no matter where, with or for the benefit of citizens of Pennsylvania . . . Conceding, then, that by going into Pennsylvania, without first complying with its statute, the defendant association may be held to have consented to the service upon the Insurance Commissioner of process in a suit brought against it there in respect of business transacted by it in that Commonwealth, such assent cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania. . . . As the suit in the Pennsylvania court was upon a contract executed in Indiana; as the personal judgment in that court against the Indiana corporation was only upon notice to the Insurance Commissioner, without any legal notice to the defendant association and without its having appeared in person or by attorney or by agent in the suit; and as the act of the Pennsylvania court in rendering the judgment must be deemed that of the State within the meaning of the Fourteenth Amendment, we hold that the judgment in Pennsylvania was not entitled to the faith and credit which, by the Constitution, is required to be given to the . . . judicial proceedings of the several States, and was void as wanting in due process of law.' ''

As before stated, it should be *remembered* that in that case Simon *purchased his ticket at and from Salem, Alabama, to Meridian, Mississippi,* and that while riding on that ticket *he was injured in Alabama;* also that *service of the summons* in that case *was not had under the authority of the first section* of the Louisiana act mentioned, which authorizes service of process in such cases upon *one of the company's own agents* or officers in the State; but said service was had under the *second section* of said act which only applies whenever any such company transacts any business in that

State *without having complied with the requirements of section 1* of said act, and then and only then, could service of process be had upon the Secretary of State. That is, service under the second section could never be had where the railway company had complied with the requirements of the first section of the act, for in that case the service would have to be had under it, and not the second section; and there was not a *scintilla* of evidence introduced in that case which tended to show said company had not complied with the requirements of that section which of itself was sufficient to render inoperative the second section, for the obvious reason that it expressly provides whenever any such company transacts any business in that State without complying with the requirements of the first section, then service may be had under the authority of the second section. But concede that the railway company had complied with the requirements of the first section, then of course, in the express language of the second section it could not apply or become operative in that case, for the company had complied with the requirements of the first section.

And it should also be noted in this connection that two concurring facts had to affirmatively appear before the second section could, under its express provisions, apply to that case: first, that the railway company had not complied with the requirements of section one; and, second, that the company was doing business in that State without authority from the State to do so. There was no showing of non-compliance with the former, and therefore all business shown to have been transacted in that State by the railway company must be presumed to have been lawful, and not unlawful, under the laws of that State, as well as that of other States. In other words, the second section was designed to provide for service upon all such corporations which were poachers or interlopers, trans-

acting business illegally in that State. In other words, by reading, the second section of the Louisiana act, it will be seen that it *only applies* to suits brought against a foreign corporation doing business *in that State without authority therefrom,* and therefore it could not apply to the Simon-Railway case, because that suit was based upon a tort committed, not in Louisiana, but in the State of Alabama. The mere fact, if it was a fact, of which there was no evidence either way, that the railway company may have been doing business illegally in Louisiana, that is, without authority from the State, could not expand the provisions of that section so as to embrace suits based upon torts committed or contracts executed in another State. Nor was the railway company in that case guilty of any conduct from which the law could or would presume that it had by implication consented to service upon the Secretary of State or the Assistant Secretary. Such implication can only arise from the fact that the transaction out of which the suit grew was transacted in the State without authority.

The second section, therefore, in the very nature of the case, was only applicable to suits growing out of said illegal transactions. That must be true, for the reason that said section by express terms limits its operation to suits brought in that State growing out of such illegal operations. Let me make this point clear, for it is the differentiation between this and the Simon case, and the one upon which the members of this court differ. The second section of the Louisiana act was designed to afford redress in the courts of that State, to only such persons who had been induced to make contracts therein with a foreign corporation which had not complied with the requirements of the first section thereof; and consequently the process authorized to be issued and served by the second section was of necessity limited to suits growing out of said poaching contracts so made in that State; and it could not pos-

sibly apply to any contract made in any other State or country.

This is the principle upon which the cases of Mutual Reserve Association v. Phelps, 190 U. S. 147, and Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, are based; and that is the reason and the sole reason upon which the learned judge who wrote the opinion in the Simon-Railway Case used this language:

"But this power [the power to serve the Secretary of State without the consent of the company] to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction of the State enacting the law."

This is clearly the meaning of the second section; and I am unable to see what other meaning that court or any other court could give to it.

Moreover, if under the second section, because of the fact that a foreign corporation illegally transacted business in Louisiana—perchance just one transaction (and the record discloses in that case it was not extensive)—it may be sued in the courts thereof upon all lawful business transactions conducted in another State, as well as upon the illegal transactions conducted in that State, then why was the first section, which is general in its provisions, enacted? I respectfully submit, none whatever; and to answer the question otherwise would permit the second section (which is an exception to, or more accurately speaking, is an assisting adjunct to the first, designed to cover the poaching transactions not embraced in the first) not only to control the first, the principal part of the act, but would practically repeal it and wipe it from the statutes of Louisiana; and that, too, would be brought about by the illegal act of a wrongdoer.

This was the identical question that was involved in the case of Old Wayne Life Association v. McDonough, 204 U. S. 22; and the ruling of the court in that

case was just as it was on the Simon-Railway case. This is made clear from the following language quoted from the former:

" 'But even if it be assumed that the company was engaged in some business in Pennsylvania [which was without authority] at the time the contract in question was made, it cannot be held that the company agreed that service of process upon the Insurance Commissioner of that Commonwealth would alone be sufficient to bring it into court in respect of all business transacted by it, no matter where, with or for the benefit of citizens of Pennsylvania . . . Conceding, then, that by going into Pennsylvania, without first complying with its statute, the defendant association may be held to have consented to the service upon the Insurance Commissioner of process in a suit brought against it there in respect of business transacted by it in that Commonwealth, such assent cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania. . . . As the suit in the Pennsylvania court was upon a contract executed in Indiana; as the personal judgment in that court against the Indiana corporation was only upon notice to the Insurance Commissioner, without any legal notice to the defendant association and without its having appeared in person or by attorney or by agent in the suit; and as the act of the Pennsylvania court in rendering the judgment must be deemed that of the State within the meaning of the Fourteenth Amendment, we hold that the judgment in Pennsylvania was not entitled to the faith and credit which, by the Constitution, is required to be given to the . . . judicial proceedings of the several States, and was void as wanting in due process of law.' "

By the use of the words, "Conceding, then, that by going into Pennsylvania, without first complying with its statute [which made its contract illegal], the

defendant association may be held to have consented [by implication] to the service upon the Insurance Commissioner of process in a suit brought against it there in respect of business transacted by it in that Commonwealth [which was without permission of the State, and therefore illegal], such assent cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania," the court meant to say, and did in effect say, that the fact that the Old Wayne Company had previous to the time it executed and delivered the policy there in suit to the insured in the State of Indiana it had been transacting business in Pennsylvania without authority, constituted no ground, within the meaning of the Pennsylvania statute, from which the court could presume that the company had consented by implication that the Insurance Commissioner of Pennsylvania might accept service of process in a suit based upon the policy so executed and delivered in the State of Indiana, notwithstanding the fact that such a presumption would have been indulged in against the company, had that suit been based upon one of the policies mentioned, executed and delivered by it in Pennsylvania, without authority given by that State.

In that case, as in the Simon case, there was no express agreement that service might be *had upon any one,* yet the court stated that it might have implied consent of service in that case, had the company illegally entered said State, and there have transacted the business out of which that litigation arose, in violation of its laws; but in that case it refused to indulge in such presumptions because the uncontradicted evidence showed that the transaction out of which that litigation arose was not conducted in the State in which the suit was brought and process served; and therefore held that in the very nature of the case it could not be presumed that the company by implication consented to service in the State of Pennsylvania, from the mere

fact that it had illegally transacted other business therein than that out of which that litigation arose, without first complying with the laws of that State, when it affirmatively appeared that the illegal transaction sued on, and upon which the implied consent was predicated, was not conducted in Pennsylvania; but was transacted in the State of Indiana; and in the Simon case, in the State of Alabama; but neither of those suits was brought in the State where the policy was executed.

It was for this reason that the Supreme Court of the United States held in the Old Wayne and the Simon cases that such a statute, as the second section of the Louisiana act, was unconstitutional and void, if its. design was to authorize service of process upon any such company in a suit based upon other than illegal transactions conducted in the State where the suit was brought; and that was correct because that section only applies to suits based upon policies illegally issued in that State.

Suppose the service in the Simon case had been under the first section of the Louisiana act, which provides for service upon the statutory agent of the company (I use the words, statutory agent, in the sense that those mentioned in the first section are statutory agents as well as actual agents, in so far as service of process is concerned) then could it be seriously contended that the service in that case would not have been valid; that is, if it was doing a legitimate business there at the time? I think not. Otherwise, no suit could be brought in the courts of this, that or any other State against any foreign corporation doing business here, by *anyone, resident or non-resident, upon any cause of action accruing outside of the State.* That is not the law, nor ever will be, as long as the immaculate flower of justice continues to bloom in the human heart.

The service in this case was had under the authority of section 7042, Revised Statutes 1909, which cor-

responds to the first section of the Louisiana act, and not under section 7044, Revised Statutes 1909, which is substantially the same and designed to serve the same purpose as did the second section of the Louisiana act.  Section 7044 reads:

"Sec. 7044. Service of summons in any action against an insurance company, not incorporated under and by virtue of the laws of this State, and not authorized to do business in this State by the Superintendent of Insurance, shall, in addition to the mode prescribed in section 7042, be valid and legal and of the same force and effect as personal service on a private individual, if made by delivering a copy of the summons and complaint to any person within this State who shall solicit insurance on behalf of any such insurance corporation, or make any contract of insurance, or collect or receive any premium for insurance, or who adjusts or settles a loss or pays the same for such insurance corporation, or in any manner aids or assists in doing either."

Had this suit been brought under section 7044 instead of section 7042, then the case would have been on all-fours with the Old Wayne and Simon cases, for the reason the former section only applies where the policy sued on is issued in this State by such a company without first complying with sections 7040, 7041 and 7042, Revised Statutes 1909.

This is based upon the express authority of Mutual Reserve Assn. v. Phelps, 190 U. S. 147; Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, and New England Mutual Life Ins. Co. v. Woodworth, 111 U. S. 138, and the same process of reasoning is used by the Supreme Court of the United States in the Old Wayne and the Simon cases, that is, that the said statute only applies to poachers or interlopers who have issued policies in a State without first complying with her laws; consequently had the policy sued on been illegally issued in this State, then as the court said in the Old Wayne and Simon cases, there would have been an

implied consent that service of process in a suit brought thereon in the courts of this State might have been had upon the persons specified in said section 7044.

Since, however, it affirmatively appears that the appellant had fully complied with the requirements of said section 7042 and the policy having been issued in the State of Colorado, the case is not embraced within the provision of said section 7044, but falls squarely within the letter and spirit of section 7042, and therefore removes it from the operation of the rule announced in the Old Wayne and Simon cases, and brings it completely within the principles of law laid down in the case of State ex rel. v. Grimm, 239 Mo. 135, l. c. 159 to 171.

The case of the New England Mutual Life Ins. Co. v. Woodworth, 111 U. S. 138, is directly in point here. It was an action upon a life insurance policy issued upon the life of Ann E. Woodworth, who was domiciled at the time the policy was taken out in the State of Michigan, and who died at Seneca Falls, New York. She had never been domiciled in the State of Illinois and had no assets in the State of Illinois, unless the policy of insurance constituted assets. The probate court of Champaign County, Illinois, appointed the husband, S. E. Woodworth, administrator of the estate of Ann E. Woodworth, and he brought suit in the court of the State of Illinois against the New England Mutual Life Insurance Company, a corporation of the State of Massachusetts. Stephen E. Woodworth, appointed administrator, was the husband of Ann E. Woodworth and the said Stephen E. Woodworth, since the death of his wife, had been a resident of the county of Champaign, and State of Illinois, and had possession of the policy at the time the suit was instituted. On this state of facts, the defendant requested the presiding judges to rule that the plaintiff, as administrator appointed in Illinois, could not maintain this action. The request was overruled and the case carried to the

Supreme Court of the United States and that court sustained the proceeding, though the service was upon the defendant by virtue of a statute requiring the defendant to appoint a person upon whom lawful process could be served. In deciding the case, the Supreme Court of the United States said:

"In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has, by virtue of those laws, a place of business in Illinois, and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable, on death, to an administrator, the corporation must be regarded as having a domicil there, in the sense of the rule that the debt on the policy is assets at its domicil, so as to uphold the grant of letters of administration there. The corporation will be presumed to have been doing business in Illinois by virtue of its laws at the time the intestate died, in view of the fact that it was so doing business there when this suit was brought (as the bill of exceptions alleges), in the absence of any statement in the record that it was not so doing business there when the intestate died. In view of the statement in the letters, if the only personal property the intestate had was the policy, as the bill of exceptions states, it was for the corporation to show affirmatively that it was not doing business in Illinois when she died, in order to overthrow the validity of the letters, by thus showing that the policy was not assets in Illinois when she died.

"The general rule is that simple contract debts, such as a policy of insurance not under seal, are, for the purpose of founding administration, assets where the debtor resides, without regard to the place where the policy is found, as this court has recently affirmed in Wyman v. Halstead, 109 U. S. 654. But the reason why the State which charters a corporation is its dom-

icil in reference to debts which it owes, is because there only can it be sued or found for the service of process. This is now changed in cases like the present; and in the courts of the United States it is held, that a corporation of one State doing business in another, is suable in the courts of the United States established in the latter State, if the laws of that State so provide, and in the manner provided by those laws. [Lafayette Insurance Company v. French, 18 How. 404; Railroad Company v. Harris, 12 Wall. 65; Ex parte Schollenberger, 96 U. S. 369; Railroad Company v. Koontz, 104 U. S. 5, 10.]''

This cause had been cited and approved in the following cases: Southern Pacific Co. v. Denton, 146 U. S. 202, l. c. 207; Shaw v. Quincy Mining Co., 145 U. S. 444, l. c. 452; Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98, 1 c. 106; In re Louisville Underwriters, 134 U. S. 488, l. c. 493; In re Magid-Hope Mfg. Co., 110 Fed. l. c. 353; Burger v. Grand Rapids & I. R. Co., 22 Fed. l. c. 563; Kibbler v. St. Louis & S. F. R. Co., 147 Fed. l. c. 881; Elk Garden Co. v. T. W. Thayer Co., 179 Fed. l. c. 558; Mich. Aluminum F. Co. v. Aluminum Castings Co., 190 Fed. l. c. 883; Mooney v. Buford & George Mfg. Co., 72 Fed. l. c. 40; Hazeltine v. Mississippi Val. Fire Ins. Co., 55 Fed. l. c. 745; Overman Wheel Co. v. Pope Mfg. Co., 46 Fed. l. c. 579; Riddle v. New York, L. E. & W. R. Co., 39 Fed. l. c. 291; Zambrino v. Galveston, H. & S. A. Ry. Co., 38 Fed. l. c. 452.

Since the opinion in the Simon-Railway case was handed down a case similar to the one at bar came before the United States District Court of New York, and it was there said:

''In Simon v. Southern Railway, 236 U. S. 115, the Supreme Court decided that a court of Louisiana had not acquired jurisdiction under the following facts: The defendant was a railroad company organized in another State, having none of its railroad in Louisiana; but doing some business there. The statutes of

Louisiana directed all foreign corporations doing business in the State to appoint an agent on whom process should be served, and provided that if the corporation failed to make an appointment, service might be made upon the Secretary of State. The defendant not having appointed any such agent, Simon served his process on the Assistant Secretary of State in an action arising upon the tort of the defendant committed within the State of Alabama. The ground of the decision was that the implied consent of the corporation arising from its doing business in Louisiana must be limited to actions arising out of the business done within the State. The same rule was laid down in Old Wayne Life Association v. McDonough, 204 U. S. 8; the action there being in Pennsylvania upon a life insurance contract executed in Indiana by an Indiana corporation.

"In Simon v. Southern Railway, supra, the court especially reserved from the decision a case such as those at bar, where a foreign corporation has complied with the State statute and appointed an agent upon which process may be served. Such a case at first blush presents an apparent contradiction. Since 1839 (Bank of Augusta v. Earle, 13 Pet. 519), it has been the doctrine of the Supreme Court that a foreign corporation was a fictitious entity which had no existence outside of the territory of the sovereign which created it. All its acts elsewhere must be viewed as those of an absent principal, acting through an authorized agent. It resulted that personal jurisdiction could arise only when some agent had been appointed who was expressly authorized to appear or to accept service for the absent principal. [St. Clair v. Cox, 106 U. S. 350.] Otherwise the foreign State must proceed *in rem* against the property of the corporation, or *in personam* against agents within its borders. In 1855 (Lafayette Ins. Co. v. French, 18 How. 404), the court modified the extreme application of this doctrine by

holding that, when a corporation did business within a foreign State which required as a prerequisite the appointment of an agent, consent to such an appointment must be assumed from the doing of the business, and that jurisdiction *in personam* would be acquired just as if there had been in fact an appointment. [St. Clair v. Cox, supra.]

"The defendant here argues that the terms of such an implied consent cannot be supposed to be other than those which the State statute attempts to exact, and that if the implied consent is to be limited, as has now been indubitably done, the express consent must be limited in exactly the same way. Were this not true, the defendant urges, an outlaw who refused to obey the laws of the State would be in better position than a corporation which chooses to conform. The theory of implied consent dialectically requires the same limitations to be imposed upon express consents, at least in the absence of some explicit language to the contrary in the State statute.

"The plaintiffs, on the other hand, urge that the express consent of a foreign corporation to the service of process upon its agent (Section 16, General Corporation Law; Section 432, Code of Civil Procedure) must be interpreted in the light of the statutes of the State giving jurisdiction to its own courts, and that in the cases at bar, residents of New York, may, under the New York Code, section 1780, sue foreign corporations upon any cause of action whatever. While, of course, the jurisdiction of this court over the subject-matter of suits depends altogether upon Federal statutes, the question now is of personal jurisdiction, and that depends upon the interpretation of the consent actually given, an interpretation determined altogether by the intent of the State statutes. That intent being determined, there is no constitutional objection to a State's exacting a consent from foreign corporations to any jurisdiction which it may please, as a condition

of doing business. Intent and power uniting in the sections in question, how is it possible to confine the provision to actions arising from business done within the State? [See State ex rel. v. Vandiver, 222 Mo. l. c. 220, where the opinions of the Supreme Court of the United States are reviewed.]

"These two arguments treated as mere bits of dialectic, lead to opposite results, each by unquestionable deduction, so far as I can see. One must be vicious, and the vice arises I think from confounding a legal fiction with a statement of fact. When it is said that a foreign corporation will be taken to have consented to the appointment of an agent to accept service, the court does not mean that as a fact it has consented at all, because the corporation does not in fact consent; but the court, for purposes of justice, treats it as if it had. It is true that the consequences so imputed to it lie within its own control, since it need not do business within the State, but that is not equivalent to a consent; actually it might have refused to appoint, yet its refusal would make no difference. The court, in the interests of justice, imputes results to the voluntary act of doing business within the foreign State quite independently of any intent.

"The limits of that consent are as independent of any actual intent as the consent itself. Being a mere creature of justice it will have such consent only as justice requires; hence it may be limited, as it has been limited in Simon v. Southern Railway, supra, and Old Wayne Insurance Co. v. McDonough, supra. The actual consent in the cases at bar has no such latitudinarian possibilities; it must be measured by the proper meaning to be attributed to the words used, and where that meaning calls for wide application, such must be given. There is no reason that I can see for imposing any limitation upon the effect of section 1780 of the New York Code, and as a result I find that the consents covered such actions as these. This does not,

of course, touch the question of the jurisdiction of this court over the subject-matter in either case.

"Motions denied." [Smolik v. Philadelphia & Reading Coal & Iron Co., 222 Fed. 148.]

Of course I know that the district court has no power to overrule the United States Circuit Court of Appeals or the Supreme Court, yet the opinions of that court, when founded upon reason and authority and not in conflict with those superior tribunals, are worthy of careful consideration in trying to ascertain the meaning of the opinions of either of those great courts upon any question left in doubt by them, and for that reason I have quoted quite extensively from the case last cited.

There is another marked distinction between this case and the Old Wayne and Simon cases, and that is the statute there under consideration was only applicable to exceptional cases, as previously stated, while in the case at bar, section 7042 constitutes an important part of article 7 of chapter 61, Revised Statutes 1909, which contains the *General Provisions* applicable to all kinds of insurance transacted in this State, including life, fire and accident, whether by a domestic or a foreign company. That article places all of said foreign companies upon an equality before the law with domestic companies, including the rights to open offices, appoint agents, issue policies in every portion of the State, and to sue and be sued.

Any such foreign company which has complied with sections 7040, 7041 and 7042, Revised Statutes 1909, for all practical purposes becomes a citizen of this State in the same sense as do domestic companies of the same character; and are considered citizens of this State and possess all of the rights, privileges and immunities that are possessed by the latter. Of course the foreign company must renew its license to do business within the State every year; but so long as that license remains in force there is no distinction between

the rights, powers, duties and obligations of the for-
eign and domestic corporation; and such a "corpora-
tion must be regarded as having a domicile" in this
State.   [New England Life Insurance Co. v. Wood-
worth, supra.]

And "within the contemplation of the statute re-
lating to service of summons upon foreign insurance
companies, such companies are regarded as residing
in each county of the State." [State ex rel. v. Grimm,
239 Mo. l. c. 166; Meyer v. Ins. Co., 184 Mo. l. c. 486.]

And "it must be conceded that the only mode by
which a foreign insurance company can be served with
process in this State is by the method provided for in
said section 7042." [State ex rel. v. Grimm, 239 Mo.
l. c. 160; Baile v. Equitable Fire Ins. Co., 68 Mo. 617;
Middough v. Railroad, 51 Mo. 520.]

But how about section 7044, Revised Statutes 1909,
the statute of this State corresponding to the second
section of the Louisiana act, under which the service
of summons in the Simon case was had? This section
was not dealing with the general rights, powers, duties
and obligations of foreign insurance companies duly
licensed to do business in this State, as section 7042
does, but was designed for a single purpose, viz.: to
procure service upon *poaching companies issuing poli-
cies of insurance in this State* without permission from
her to so do.

The service provided for by this section is, there-
fore, *confined to suits brought in the courts of this
State, upon policies unlawfully issued herein;* and as
previously stated, *does not and cannot, in the very
nature of the case, apply to suits brought in the courts
of this State upon policies issued in another state or
country, nor to policies lawfully issued in this State,
provided of course, such a company is domiciled here,
that is, has authority to transact business herein.*

If this was not the law, then the courts of this
State could never acquire jurisdiction over the person

or subject-matter of any suit brought in the courts hereof against any insurance, railroad, telegraph, telephone or other foreign corporation, either lawfully or unlawfully doing business in this State, *upon any cause of action growing out of any transactions not negotiated in this State, notwithstanding the fact that the plaintiff might be a resident of Missouri and the transaction may have been negotiated in California or New York.* In such a case the party having the cause of action would have to go to one of those States, the one in which his cause of action arose, and sue there, notwithstanding such company was lawfully domiciled in this State, with equal powers and rights of the domestic companies of like character. But in principle it is wholly immaterial whether the plaintiff is a resident or non-resident in such case, if the position of counsel for the appellant is correct. But if that of counsel for the respondent is sound, and the cause of action is transitory in character, then a person owning the same may sue any such company thereon in the courts of this State and have due process of law, regardless of the place, state or nation where the cause of action arose. Of course service in such cases would have to be had under section 7042, and not 7044; only under the latter when the cause of action arose in this State under a poaching transaction. [New England Life Association v. Woodworth, supra; The King of Prussia v. Kuepper, 22 Mo. 550; Mutual Reserve Assn. v. Phelps, 190 U. S. 147; Mutual Life Ins. Co. v. Spratley, 172 U. S. 602.]

I am, therefore, clearly of the opinion that section 7042 is not unconstitutional, for the reason assigned by counsel for appellant in the second subdivision previously stated; and their contention in that regard is ruled against them.

III. This brings us to the third subdivision of appellant's contentions.

In effect counsel for appellant contend therein that the Legislature of this State has no constitutional power to enact laws conferring jurisdiction upon the courts of this State to try and determine suits against foreign insurance companies duly licensed and doing business in this State, based upon contracts of insurance executed in another state or country, whether the property is located in this State or not.

**Rights of Non-Resident to Sue in Missouri Courts.**

The contention is that such legislation would do violence to section 30 of article 2 of the Constitution of Missouri, and section 1 of the Fourteenth Amendment of the Constitution of the United States, known as the equal rights and due process clauses of those beneficent instruments.

If this contention is true, such a ruling would be no less novel than astounding. In the light of the constitutional provisions just referred to and others to be presently mentioned, and those of similar import contained in the constitutions of the various States of the Union, also in the light of the numerous other statutes of this and those States enacted in pursuance thereof, giving force and effect to them, as well as the common law governing transitory actions, coupled with innumerable decisions of the courts of last resort of the various States and those of the Supreme Court of the United States, it seems to me that the mind which discovered the pregnable point here contended for, hidden behind such a barricade' of constitutional provisions, legislative enactments, common law rules and judicial decisions, possessed a keener perception for the discovery of the vulnerable points in our jurisprudence than any of the great military geniuses of the world has ever possessed for the discovery of the weak positions in the enemy's position, and was more daring and self-reliant in his

267 Mo. 37

attack than any of the bold knights mentioned in the Legends of the Rhine.

But before taking up the question of the power of the Legislature to enact laws conferring jurisdiction upon the courts of this State to try such cases, I will briefly consider what is a transitory action, and where it may be brought, both at common law and under the Constitution and laws of this State and of the United States.

It is elementary that all transitory, or what are known as personal actions, may be brought by anyone capable of suing in any county, State or Nation where the defendant may be found, subject, of course, to any express constitutional or valid statutory restrictions that may exist.

After treating of local actions, Mr. Boote, in his Historical Treatise of an Action or Suit at Law (4 Ed.), on page 96, in considering transitory actions, says:

"With respect to the Venue, it is said, that on the settling of *Nisi Prius*, they obliged the plaintiff to try his action where it accrued because the jury was to come from where the fact was committed. But while the Process was by Attachment and Distress, which could be only where the defendant's goods were, it begat a distinction between Actions; the one being called Transitory, which related to goods and chattels, and was to follow the defendant wherever he could be found; the other was called Local, because it related to lands, and the process was to be on the lands. These were to be laid in the County where the lands lay; but in Transitory Actions the plaintiff had liberty to choose his venue, being supposed to lay it where the action accrued; and in case the defendant fled from that place, the plaintiff had liberty to try his Action in the County wherein the defendant was summoned. But this came at length to be much abused, for the plaintiff would lay his Action far from the place where the Action arose, which put the defendant

under a necessity of carrying his Witnesses into a County far from the place. In order to prevent this, the 6 R. 2 was made, which enacts that Writs of Account, Debts, etc., should be commenced in the County where the contracts were made; for if the contracts were made in another County than contained in the Original, the Writ should abate. But this Statute (it is said) was never put in use, for it was thought the plaintiff could not then follow the defendant into another county, and it was foreseen that many other mischiefs would arise."

Blackstone announces the same rule. In volume 3, page 294 (4 Ed.—Lewis), he states the law thusly:

"*In transitory actions,* for injuries that might have happened anywhere, as debt, detinue, slander and the like, the plaintiff may declare in what county he pleases, and then the trial must be had in that county in which the declaration is laid."

Mr. Gould in his work on Pleading (5 Ed.), page 103, section 104, lays down this rule:

"In the application of this ancient rule, however, a distinction, suggested by general convenience, was soon established between things local and transitory; and consequently between local and transitory actions. . . . But in actions transitory, the ancient rule as to the locality of actions and trials, is now, and has long been, entirely disregarded, or rather *evaded,* to every purpose except the mere *form of laying some venue,* and the power of the court, under special circumstances, to change it, i. e. to change the county, on motion. In transitory actions, therefore, the plaintiff is at liberty to lay the venue in what county he pleases." [Citing: Bac. Abr. Actions Local, etc., B.; Com. Digest Pleadings, S. 9; Cowp. 177; 1 Saund. 74 (n. 2.); Gilb. H. C. page 89-90.]

Mr. Gould, also on page 108, section 112, says:

"But personal actions, that is to say, actions which seek nothing more than the recovery of money, or

personal chattels of any kind, are in most cases transitory, whether they sound in tort or in contract: Because actions of this class are, in most instances, founded on the violation of rights which, in contemplation of law, have no locality. And it will be found true, as a general position, that actions *ex delicto*, in which mere personalty is alone recoverable, are, by the common law, transitory—except when they are founded upon, or arise out of some local subject. Thus actions for injuries to the person, or to personal chattels,—as for assault and battery, false imprisonment, slanderous words, libel and malicious prosecution—trespass for taking away or injuring personal chattels, trover, trespass on the case for escapes, false returns, deceit in the sale of goods, etc., are in general transitory; and may consequently be laid in any county, even though the cause of action arose within a foreign jurisdiction." [Citing: Com. Digest, Actions, N. 12; Coke's Littleton, 282; Cowp. 161; 1 T. R. 571; 2 Black. Rep. 1058; 2 Chitty on Pleading, 242 (n. p.); 2 Salk. 670; 12 Mod. 408; Sayer, 54; 1 Wils. 336; 1 East. 114; Cro. Car. 444; 9 Johns. R. 67, and 4 East. 162-3.] See also Browne on Actions at Law, pages 228 and 229.

The common law definitions of local and transitory actions were in full force and effect when the Constitution of the United States was adopted, and consequently, section 2 of article 4 thereof, has an important bearing upon all the common law adopted and statutes enacted by this State since that time (as will be presently shown), which provides: "*The citizens of each* State shall be entitled to all privileges and immunities of *citizens in the several States.*" (Italics ours.)

And in connection with said section two of the Constitution must be read section 1 of the Fourteenth Amendment thereof, for the reason it relates to the same subject-matter, and greatly enlarges the provisions of said second section. This amendment reads:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Section 30 of the Missouri Bill of Rights is along the same line, and reads: "That no person shall be deprived of life, liberty or property without due process of law."

So also will section 10 of article 2 of the Constitution of Missouri shed much light upon this question, especially when read in the light of article 6 of the Constitution of Missouri. Said section 10 reads as follows:

"*Courts of justice must be open.*—The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay."

Upon the ancient common law character of personal or transitory actions, and their venue, or places where to be brought and tried, Judge BLISS in his excellent work on Code Pleading, page 414, section 284, says:

"I am not speaking of the obsolete venue. At common law the pleader must allege a place in reference to every traversable fact, and that place, wherever the fact occurred, is charged as being within the county where the cause is to be tried. The code obligation to state the facts of itself forbids a fictitious venue, and, unless the place is material, it does not become one of the facts which constitute the cause of action. But actions are still divided into local and transitory, and as to the former, the issues

must be tried in the county where the cause of action has arisen.

"The several States have designated the classes of actions which require such trial, and they are usually made to conform to local actions at common law."

So I feel safe in saying that if not predicated upon and enacted in pursuance to that common law doctrine, the Legislature of this State largely followed and fashioned the Code of Civil Procedure of this State closely after it, especially sections 1751, Revised Statutes 1909, the general statute providing *where suits* instituted by summons shall be brought except as otherwise provided for therein. That section of the statute reads:

"Sec. 1751. Suits instituted by summons shall, except as otherwise provided by law, be brought: First, when the defendant is a resident of the State, either in the county within which the defendant resides, or in the county within which the plaintiff resides and the defendant may be found; second, when there are several defendants, and they reside in different counties, the suit may be brought in any such county; third, when there are several defendants, some residents and others non-residents of the State, suit may be brought in any county in this State in which any defendant resides; fourth, when all the defendants are non-residents of the State, suit may be brought in any county in this State; fifth, any action, local or transitory, in which any county shall be plaintiff, may be commenced and prosecuted to final judgment in the county in which the defendant or defendants reside, or in the county suing and where the defendants, or one of them, may be found."

This statute, in substantially the same form in which we now find it, has been upon the statute books of this State almost from its organization.

This section of the statute, with all kindred sections which were enacted at the same time or subse-

quently thereto, were designed to open the doors of the courts of this State to all persons who have valid claims against any and all persons within the jurisdiction of this State; and it was never the intention of the framers of the Constitution, State or Federal, or the Legislature, to close them against justice and to shield wrong.

These and all kindred laws are designed to make effective the old maxim, *Ubi jus, ibi remedium.* In fact, that is one of the chief corner stones of all government. This appears in section 4 of the Bill of Rights, which among other things provides: "That all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design."

With these objects and those designs in view, whenever the lawmakers of the State discovered that for any deficiency in the law, exact and even justice could not be done and measured out to each and all, whether plaintiff or defendant, they have steadfastly endeavored, by enacting new laws or amending old ones, to remedy that injustice, and at the same time deprive no one of life, liberty or property without due process of law, as provided for in the State and Federal Constitutions.

Among the numerous laws so enacted by the Legislature of this State for the purposes mentioned, are those providing where foreign railroad companies, telegraph companies, telephone companies, insurance companies, including life, fire and accident, doing business in this State, may be sued in the courts hereof, and how they may be served with process.

Moreover, there are many private corporations organized under the laws of other States doing business herein, and we have statutes providing where they may be sued and how served.

And in addition to the constitutional provisions and statutory enactments before mentioned governing the questions in hand, the Legislature of this State, by an amendment in the year 1905, of sections 547 and 548, Revised Statutes 1899, provided *generally* that whenever any cause of action has accrued under or by virtue of any of the laws of any other State or Territory, such cause may be brought in the courts of this State by the person entitled to the proceeds of such cause of action. Those statutes are now sections 1736 and 1737, Revised Statutes 1909, and read as follows:

"Sec. 1736. Whenever a cause of action has accrued under or by virtue of the laws of any other State or territory, such cause of action may be brought in any of the courts of this State, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the laws of the State or territory where the cause of action accrued.

"Sec. 1737. Whenever any cause of action has accrued under or by virtue of the laws of any other State or territory, and the person or persons entitled to the benefit of such cause of action are not authorized by the laws of such State or territory to prosecute such action in his, her, or their own names, then, in every such case, such cause of action may be brought and prosecuted in any court of this State by the person or persons authorized under the laws of such State or territory to sue in such cases. Such suits may be brought and maintained by the executor, administrator, guardian, guardian *ad litem,* or any other person empowered by the laws of such State or territory to sue in a representative capacity."

From this reading of these two sections it will be noticed that they place no limitation whatever upon the persons who may bring such a suit, save, of course, that it must be brought by the party who under the

law of said state or territory is entitled to the proceeds of said cause of action, and of course that might be either an individual or a corporation.

The clear purpose of all of our statutes when taken together was to give full force and effect to said section 10 of article 2 of the Missouri Constitution, which provides that, "The courts of justice shall be open to *every person.*" Not a part of them. Not to the citizens or residents of Missouri only, nor to the citizens of the United States only, but to all persons of the world who demand justice at the hands of our courts against any one who may be found within the jurisdiction of this State, whether resident or nonresident, individual or corporation. This is perfectly clear from the reading of that section of the Constitution which says *every person* may sue. Not only that, but the same section further provides that "certain remedy [shall be] afforded for *every injury to person, property or character,* etc." This provision is not limited to *some of the injuries* that have or may be done to the person, property and character of those mentioned in the preceding clauses, but by clear and unambiguous words, includes *every one of the character mentioned.*

The case of the King of Prussia v. Kuepper's Admr., 22 Mo. 550, while not discussing all of the questions suggested regarding this section of the Constitution, yet in fact it recognizes and gives full force and effect to most, if not all of them; and by the express terms of section 1 of the Fourteenth Amendment all the constitutional and statutory provisions of this State regarding these questions, which apply to the citizens of Missouri, are extended to all other citizens of the United States, even though said section 10 of our Constitution did not include them. But in a sense, that is a moot question, for the reasons as previously shown, said section 10 embraces not only the citizens of

Missouri, but those of the United States also, as well as all persons of the world.

This is not a theory, but cold, stern law; and our reports and those of the Supreme Court of the United States are full of cases recognizing and enforcing those laws.

Such of these legal propositions as are material to this case will be considered at the proper place in connection with the facts they govern.

Of course, all constitutional and statutory provisions, State and Federal, are limited in their scope and operation, to those cases of which the court acquires jurisdiction by summons duly served; and if perchance, through the imperfection of the law, there should be a cause of action for which no provision is made for due process of law, then the person interested would have a loss without a remedy, an exception to the maxim, "No right without a remedy."

It was for the purpose of embracing these exceptional cases that the various amendments of the Act of 1845 were enacted, and the various new statutes mentioned were passed by the Legislature; all of which, in my opinion, amply provide for due service in all cases they were designed to embrace.

I have given this brief summary of the origin, growth and history of transitory actions in England, and their importation, adoption and expansion by means of legislative enactments, which are along the lines of the State and Federal constitutional provisions before mentioned, providing a remedy for every wrong and guaranteeing equal protection to all, and preventing anyone from being deprived of life, liberty or property without due process of law, whether residents or non-residents, corporations or individuals.

I will now address myself to the question, has the Legislature of this State the constitutional authority to enact a statute conferring jurisdiction upon the courts of this State to try a case against a foreign

insurance company duly licensed and doing business in this State, upon a policy issued in another State or country? The answer must be in the affirmative if not restricted by State or Federal Constitution.

Counsel for appellant answer that question in the negative, but assign no reason therefor, except the contention that the Supreme Court of the United States has so held in the Old Wayne and Simon cases, previously mentioned.

If our conclusions announced in Paragraph Two of this opinion, as to the holding of those cases, are correct, then counsel for appellant have no solid basis upon which to predicate that answer. This is for the reason that if those cases do not support their contention, then the case at bar must be determined according to the rules of law governing ordinary transitory actions. That this suit is transitory in character cannot be questioned, and, therefore, according to the authorities cited, a suit on the policy might have been brought in any State where the defendant might have been found.

This is not denied by counsel for appellant, but they contend that the appellant was not a resident of this State at the time this suit was instituted, except as to the business transacted herein, and that in regard to all other matters it was a non-resident.

This contention was decided against the appellant in Paragraph Two of this opinion, and correctly so, we think. But concede for the sake of the argument, that the defendant was not a resident of this State in the strict sense of that term, at the time this suit was brought, yet it voluntarily came here and was by permission of this State authorized to transact all kinds of business that a domestic company of like character could have transacted, and could sue and be sued in the courts of this State. The mere fact that the appellant was not, technically speaking, a resident of this State, makes no difference in my opinion, since it

was found within the jurisdiction of Missouri, whose laws provide that it might be sued in the courts hereof, and prescribed ample means for service of due process of law upon it, in all transitory actions brought against it. That is all the State and Federal Constitutions require.

As previously stated, all such companies doing business in this State under authority of our laws stand precisely upon the same footing and equality with domestic companies of like character, yea, even with individuals, whether residents or non-residents, if found within the jurisdiction of this State.

In such a case, what possible difference does it make where such a contract was made? I submit, none whatever. To illustrate, suppose an individual, a resident of New York, should execute a note in California, promising to pay another a certain sum of money, and should then come to this State and remain until the note matures: could it be seriously contended that the maker of the note could not be sued thereon in the courts of this State, simply because the note was not made in this State and that the maker was not a resident of the State of Missouri? I apprehend not. The test in transitory actions, as laid down by all of the authorities, is, does the law of the State where the defendant is found provide: first, that suit may be brought upon such a cause against any and all persons found within the jurisdiction of the State, whether residents or non-residents thereof; and, second, does the law amply provide for due process of law upon the defendant in such a case? If so, then it is wholly immaterial where the cause of action arose, and what is the residence of the defendant.

Not only that, if the contention of counsel for the appellant is sound, then our general statutes, articles 3 and 4 of chapter 21, Revised Statutes 1909, prescribing the place where transitory actions must be brought in the courts of this State, against residents and non-

residents found in the jurisdiction of Missouri and how
service of process may be had upon them, in so far
as *non-residents are concerned,* and in so far as it *re-
lates to all causes of action not originating in this State,*
are void also.  This would be true inevitably; and not
only as to this State, but to every other State in the
Union, because said section 1 of the Fourteenth Amend-
ment applies equally to all of the States.  Yea, even
the attachment laws of this and other States author-
izing the property of non-residents to be attached would
be unconstitutional in all cases where the cause of ac-
tion is based upon a transaction which was made in
some other state or country.  This would be true, be-
cause, as said by counsel for appellant, the Legislature
of this State has no constitutional power to draw to its
jurisdiction a cause of action arising elsewhere.  The
fallacy of this position is this: the Legislature of this
State has never attempted to draw to its jurisdiction
any cause of action that it did not possess at common
law.  Said section 7042, in that regard, is declaratory
of the common law, only changing it as to the country
where suit may be brought, and prescribing the mode
of service of process, which is ample, as is shown by
the record in this case; the appellant was duly served
and given ample time and opportunity to make its de-
fense.  Not only that, but section 1 of the Fourteenth
Amendment of the Constitution of the United States
prohibits just what counsel for appellant is contending
for, namely: that no resident or non-resident of this
State can sue a foreign insurance company in the courts
of this State, although it is authorized to, and is doing
business here, upon a contract of insurance executed
in another State or country; yet, they admit, which is
true, that such a suit may be brought against such a
company on a contract executed elsewhere, in the
courts of this State.  If that is not true, then accord-
ing to appellant's contention, it could not be sued at
all, anywhere.

What difference is there in legal effect, between the two? None; both companies are of the same character; they issue the same class of contracts within and without this State; they possess the same rights and powers, and the same duties and obligations are imposed upon them; the contracts of each are transitory in character; both may sue and be sued in the same courts of this State; when plaintiffs they have the same character of process issued in their behalf and served alike for them upon the defendants; and when defendants, the same kind of summons is issued in their behalf, and served upon their respective agents, appointed by the respective companies, differing only in that in the case of the domestic company the statute providing for service of process is upon certain persons who have been chosen by the company as its agents or officers to represent it in other capacities, that is, persons who are in the employ of the company, to perform its ordinary business, while in the case of the foreign company, the service is had upon a person also chosen by the company, but not in the employ of the company, but who is an officer of this State, the Superintendent of Insurance.

Again, if not conceded, it is true nevertheless, that if an individual non-resident of this State should execute a note outside of this State it could not be sued thereon in the courts hereof, when it becomes due. Why not? Each had the right to execute the note mentioned; both were made outside of this State; both are transitory causes of action, the laws of the State provide the same courts in which such suits thereon may be brought, and provide for the same kind of process and upon whom service may be had. In the case of the individual it must be served upon him personally or upon some member of his family, if not found, etc., while in the case of the company, domestic or foreign, because of its artificial character, the service *must be*

*had upon its duly constituted agent* (whether sued at home or abroad), the Superintendent of Insurance.

Upon this state of facts, there can be no question, in my opinion, but what said Fourteenth Amendment equally applies to foreign insurance companies doing business in this State under license duly issued to it, as it does to domestic companies engaged in like business, and to transactions of like character transacted by individuals; otherwise, they would not enjoy the equal protection of the laws, either in suing or being sued.

If that is not the law, then a person residing or stopping in this State, or a corporation organized under the laws hereof, might execute a note for $1000 in the State of Illinois to a foreign insurance company doing business in this State, yet it could not sue and recover the money due thereon from the individual nor from the domestic company, for the reason that the note was not executed in this State, and for the further reason, as contended for by counsel for appellant, that this "State has no *constitutional power to draw to its jurisdiction a cause of action arising elsewhere.*" Nor in such a case could suit be brought in the Federal court; because the amount of the note would not bring the case within its jurisdiction. I think that is indisputable (International Textbook Co. v. Pigg, 217 U. S. 91, and cases cited), yet if the same note had been executed by the same party or company, at the same place, to an *individual* instead of a foreign corporation, he could, under a long unbroken line of decisions of this court and of the Supreme Court of the United States, have maintained the suit.

This question has been decided by the Supreme Court of the United States in the case of the International Textbook Co. v. Pigg, supra. That court in that case cited the case of Chambers v. Baltimore & Ohio Ry. Co., 207 U. S. 142, l. c. 148, and quoted with approval therefrom the following language:

"This court held in Chambers v. Baltimore & Ohio R. R. Co., 207 U. S. 142, 148, that a State may, subject to the restrictions of the Federal Constitution, 'determine the limits of the jurisdiction of its courts, and the character of the controversies which shall be heard in them.' But it also said in the same case: 'The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the *highest and most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the Federal Constitution.'* "

While it is true the former case involved a question of interstate commerce, yet that question was but one of the two questions presented and decided; and it had but little or no bearing upon the question of the validity of the State statute, barring State courts to non-residents while they were left open to those within the jurisdiction of the State. This is clear, for the obvious reason that the interstate commerce clause of the Constitution of the United States in no "manner, shape or form" attempted to confer or define the jurisdiction of State courts; nor was any such authority necessary to be lodged in that clause of the Constitution in order to give Congress full and complete power to regulate that subject.

The remedy for the violation of the laws of the United States, including those governing interstate commerce, rests primarily with the Federal courts, and secondarily with the State courts, which are and have ever been opened to all persons, natural and artificial, residents and nonresidents, by section 2 of article 4 and section 1 of the Fourteenth Amendment of the Constitution of the United States. In other words, the

commerce clause of the Constitution confers upon
Congress the power to regulate interstate commerce,
but the remedy for the violation thereof must pri-
marily be in the ,courts created by article 3 of the
Constitution of the United States, and supplemented
by section 1 of the Fourteenth Amendment thereof,
which guarantees to every citizen of the United States
the same right and privilege to sue in the courts of this
State upon all transitory causes of action on which a
citizen of this State might sue, under the laws hereof.
Or in other words, if, under the laws of this State, a
citizen hereof may maintain a suit on a given cause of
action, then under said constitutional provision, any
citizen of any other State of the Union may do likewise.

This court in the case of International Textbook
Co. v. Gillespie, 229 Mo. 397, followed the rule an-
nounced by the Supreme Court of the United States in
the case of International Textbook Co. v. Pigg, supra.
See also: Cement Co. v. Gas Co., 255 Mo. 1; Roeder v.
Robertson, 202 Mo. 522; United Shoe Machinery Co.
v. Ramlose, 231 Mo. 508; State ex rel. v. Grimm, 239
Mo. 135, l. c. 179.

All of those cases decided by this court were insti-
tuted under section 1751 of our Practice Act, before
quoted; and those decided by the Supreme Court of
the United States were brought under similar statutes
of other States where the suits were instituted; but
that makes no difference in principle, in so far as this
question is concerned, for the reason that it does not
involve the question as to who may sue or be sued, or
upon whom service of process may be had in such
cases, for those questions were decided in Paragraph
Two of this opinion, but the question in hand is, *where
may suits on contracts, torts and other transitory ac-
tions be brought?*

Of course it cannot be said, nor do any of the cases
cited hold, that non-residents can sue *all persons within*

*the jurisdiction of this State,* under the section of the Practice Act before mentioned, but they do hold that if a resident of this State can sue any or all persons within the jurisdiction of this State in the courts hereof on any transitory cause of action, under that or any other statute of this State, or under the rules of the common law, then, under said section 1 of the Fourteenth Amendment, any citizen of the United States, though residing elsewhere, whether an individual or a corporation, is guaranteed the same right to sue upon a similar cause of action in the courts of this State. In other words, the effect of that section of the Constitution is to extend to all citizens of the United States, who are residents of other States or countries, the same right to sue persons found within the jurisdiction of this State, upon the same causes of action, that is enjoyed by our citizens under the Constitution and laws of this State; or, to express the same idea in different language, the Constitution and laws of this State, in the regard mentioned, were designed principally for the citizens of Missouri, and secondarily for all persons of the world, as previously stated; but be that as it may, the first section of the Fourteenth Amendment extends all such constitutional provisions and statutory enactments of this State, of the character mentioned, to all citizens of the United States residing elsewhere.

That is the plain meaning and effect of the ruling of the Supreme Court of the United States in the cases before cited upon this question; and also of the rulings of this court in the cases cited in connection therewith.

Therefore, if we are correct in the conclusions reached in Paragraph Two of this opinion regarding that clause of section 7042, providing for process against foreign insurance companies doing business in this State and upon whom process may, or rather, must be served, and also in our conclusions just stated regarding the legal rights of citizens of the United States

residing elsewhere, to sue in the courts of this State upon the same causes of action that our own citizens enjoy, then it necessarily follows that the respondent, a citizen of Arizona, had the legal right to sue appellant in the courts of this State upon the policy mentioned in the petition and evidence.

IV. This brings us to the consideration of the fourth ground assigned by counsel for appellant in support of their general contention that section 7042 is unconstitutional.

In substance, that contention is, that said section, in so far as it authorizes service of process in a suit based upon a policy of insurance issued in *Domestic Contract by Foreign Citizen.* this State by a foreign insurance company doing business herein *without authority of law,* is unconstitutional, null and void under both the State and Federal Constitutions.

This contention can easily and briefly be disposed of. It is purely a moot question in this case. The policy sued on was not issued in this State, but in the State of Colorado. Therefore it was not unlawfully issued in this State, and this contention of counsel has no foundation whatever upon which to stand.

If, however, the policy had been issued in this State *without authority of the State first had and obtained,* then clearly the service of process could not have been had under said section 7042, for the reason that its express terms exclude service of process thereunder in suits founded upon all such policies; but service in all such cases could be had under section 7044, which was enacted for the express purpose of providing for service in suits on a policy of insurance issued in this State against a foreign company doing business herein *without authority of law.*

This was expressly decided by the Supreme Court of the United States in the cases of Mutual Reserve Assn. v. Phelps, 190 U. S. 147; Mutual Life Ins. Co. v. Spratley, 172 U. S. 602; and Commercial Mutual

Accident Co. v. Davis, 213 U. S. 245; and that ruling is expressly approved by the same court in the case of Simon v. Southern Ry. Co., 236 U. S. 115, l. c. 130.

The same result was correctly reached by the Court of Civil Appeals of Texas in the case of El Paso & South Western Ry. Co. v. Chisholm, 180 S. W. 156; but on page 159, that court undertook to state what the Supreme Court of the United States held in the Simon case, which shows that that court, like counsel for appellant here, misconceived and did not understand the ruling in the Simon case. The latter case has no application whatever to this case, as I think I have clearly shown.

My attention has just been called to the case of Fry v. Denver & R. G. Ry. Co., 226 Fed. 893. In that case the opinion does not disclose the statute under which process therein was served, and for that reason sheds but little light upon the question here presented; but the language used indicates that the manner of service was wholly immaterial. The opinion seems to proceed upon the theory that a suit cannot be maintained in a State without the transaction out of which it arose occurred in the State where the suit was brought. The Old Wayne and Simon cases are cited in support thereof, regardless of the statute under which process was had. If I correctly understand the opinion, then I have no hesitancy in saying that the court does not understand those cases. Instead of those cases supporting the views there expressed, they hold directly to the contrary.

But in the case at bar it must be remembered that the service was had under section 7042 and not under section 7044; but had the service in this case, under the facts thereof, been had under the latter section, then clearly the appellant would not have been served with due process of law, as was held and properly so, by the Supreme Court in the Simon-Railway case, supra. But the court in that case did not decide the moot

question here presented, but expressly declined to express an opinion upon it because not properly before the court. In that case, as in this, the cause of action did not accrue in the State where the suit was brought, and therefore in neither case could the second section of the statute apply.

What is here said about section 7044 is clearly *obiter,* but is said to dispel some of the confusion it seems to me counsel are laboring under regarding the Simon-Railway case.

V. The fifth and last ground assigned by counsel for appellant in support of their general contention that said section 7042 is unconstitutional, is substantially as follows:

That said section 7042 is unconstitutional, because it authorizes services of process in suits brought in the courts of this State against foreign insurance companies doing business herein *unlawfully, that is, without authority first had and obtained* from the State, based upon a policy of insurance issued in another State. In support of this contention we are cited to the cases of Old Wayne Life Assn. v. McDonough, 204 U. S. l. c. 22, and Simon v. Railway Co., 236 U. S. 115.

This contention may also be briefly and easily disposed of. In the first place, it may be stated generally, that neither section 7042 nor 7044 applies to the state of facts upon which counsel's contention is predicated, nor to the facts of this case. Section 7042 in express terms limits the service of the process therein mentioned to foreign insurance companies doing business in this State *under authority from the State* duly granted to them; and there is no language contained in that section which remotely indicates that it applies to any such company doing business in this State *without such authority.* Therefore, this contention of counsel is not well founded; and the cases cited in support thereof have no application whatever to this case.

Those cases, however, will be further considered presently.

Nor does section 7044 authorize service of process in suits brought in the courts of this State against a foreign insurance company, based upon a policy *issued in another State.* By its express terms the process mentioned therein is limited to *suits brought upon policies of insurance issued in this State* by such companies *without authority* from the State first had and obtained.

Not only that, but there is no other statute or law of this State that I am familiar with, which authorizes service of process in a suit brought in the courts of this Commonwealth against a foreign insurance company *not authorized to do business* herein, based upon a *policy issued* by it in *another State or country;* but if there are any such, then they would *clearly be unconstitutional* under both the State and Federal constitutional provisions previously mentioned. This is precisely what was held by the Supreme Court of the United States in the Old Wayne and Simon cases.

In the Old Wayne case, the policy was issued in the State of Indiana, to a person residing in Pennsylvania, and the suit based thereon was brought in the State of Pennsylvania, where the company had *no authority to transact business,* but had (at least presumably, as that court stated) issued *some other policies* in that State *without authority.* Upon that state of facts, the plaintiff sued the company in Pennsylvania, and had service under a statute similar in all respects to section 7042, Revised Statutes 1909, of this State. In that case the court, in effect, held that said section of the Pennsylvania statute did not apply to policies issued in another State, unless the company was lawfully doing business in Pennsylvania; and because it was not lawfully doing business in that State, and because the policy was not issued therein, the court held that the service had under that statute was void. That

ruling was clearly correct, because that statute, like said section 7042 of this State, in express terms *limited the service therein mentioned* to suits on policies *issued in that State under permission therefrom,* and did not embrace policies issued in another State.

In the Simon case the injury occurred in the State of Alabama, and the suit was brought in the State of Louisiana, and service was had under the second section of the Louisiana act, which is similar to section 7044 of our statutes. In that case the court ruled, and correctly so, that the service mentioned in that section was by its express terms limited to suits based upon torts committed in that State by a foreign corporation *not authorized to do business therein;* and therefore the service had upon the defendant was void because the injury did not occur in Louisiana.

The court went further in both of those cases and held that if the Pennsylvania statute mentioned authorized the service had in that case, then it would have been unconstitutional.

But suppose in the Old Wayne case the company had been doing a lawful business in Pennsylvania in pursuance to its authority, and service of process had been had upon the company under the same statute, then could it be said that said statute was not applicable and did not authorize the service? Certainly not; for any other answer would be in direct conflict with the plain language of the statute, and would violate section 1 of the Fourteenth Amendment of the Constitution of the United States.

The same would have been true in the Simon case, had the Railway Company been doing business in Louisiana under permission of the State and the service had been had under the first section of the act, instead of the second.

Likewise, the same rule applies to the case at bar, because the appellant was *doing business in this State, under its authority,* and service was had upon it *under*

*section 7042,* which in express terms authorized service of process in suits brought in the courts of this State against all such companies so doing business in this State, regardless of the place where the policies are issued, as before shown.

In this class of cases there would not exist that inconvenience and hardship mentioned by the court in the Simon case, for the reason that all such companies lawfully doing business in this State are domiciled here and have their offices, agents and attorneys, just as they have in the States of their creation. Any such company can try any such case in the courts of this State with as little expense and inconvenience as they could be tried in the State of its organization or in the State where the policy was issued; but be that as it may, it has nothing whatever to do with the question of jurisdiction of the courts of this State in such cases, and the hardship and inconvenience mentioned would not be one-tenth as great upon the company as it would be upon the various policyholders, should they be compelled to go to the various States where the various companies were incorporated, or to those where the policies were issued, in order to enforce their claims.

Certainly the inconvenience and hardship which might be imposed upon such a company lawfully doing business here, when required to defend suits in the courts of this State based upon a policy issued in another State, where it has its offices, agents and attorneys, would not be greater than they would be in a suit brought here against such a company based upon a policy issued by it in this State unlawfully, where it would have no office, agent or attorney; yet the Supreme Court of the United States in the cases of Mutual Reserve Assn. v. Phelps, supra, Mutual Life Ins. Co. v. Spratley, and Simon v. Southern Ry. Co., supra, hold that the latter class of suits may be maintained in the courts of this State.

If according to those cases, such a company may be sued under section 7044 in the courts of this State on a policy unlawfully issued here, then why may it not be sued under section 7042 on a policy lawfully issued elsewhere? But as stated by the Supreme Court of the United States in the Simon case, as to inconvenience, etc., this is foreign to the question of jurisdiction.

Again: If such a company can by implication consent to the trial of such cases in the courts of this State, and agree to the impositions of such hardship and inconveniences as are incident to the necessary defense of the case, then why may not such a company consent thereto by express agreement, as the appellant has done in this case?

I am, therefore, clearly of the opinion that said section 7042 is constitutional, and that it provides for ample service of process in all cases which it was designed to embrace, one of which is the case at bar; I am also of the opinion that appellant was duly served according to the provisions of that statute, and was properly in court.

We are, therefore, of the opinion that the general contention of counsel for appellant, as well as the five subdivisions thereof, are without merit, and should be disallowed, which is accordingly done.

VI. Counsel for appellant assign as error the action of the trial court in permitting the witness Doepke to testify to certain conversations had between him and Kilpatrick & Hanley, the general agents of the company at Cripple Creek, prior to and at the time the policy was issued, regarding the binding force of its terms and conditions respecting incumbrances upon and the vacancy of the property; also that the court erred in permitting said Doepke to testify as to conversations had between himself and said agents after the policy had been issued,

Estoppel and Waiver.

regarding the vacancy of the property, and cite scores of cases in support thereof.

We will consider these two assignments together, as the same principle of law underlies each.

While there is some conflict of authority on these questions in other States, but in so far as Colorado, Missouri and many other States are concerned, it is well settled that where the general agents of an insurance company, at the time of or subsequent to the issuance of the policy, are informed of the existence of any fact regarding the property which is violative of any of the terms or conditions thereof, and which would work a forfeiture, and assent thereto, then the company is estopped from interposing such conditions of forfeiture as a defense to a suit brought upon the policy to recover the damages sustained.

It is undisputed, in this case, that the respondent, at the time the policy was issued, informed the general agents of the company that the scarcity of fuel and the difficulty in getting it to the smelter until a tramway could be built, would in all probability necessitate the shutting down of the smelter for periods of more than thirty days at a time, and asked said agents what effect such idleness would have upon the policy. In reply, the agents, in substance, said, that is "all right, go on." Not only that, the same matters were discussed between the same parties each and every month, from the time the policy was issued until the date of the fire, and upon each occasion the insured asked said agents what effect would the vacancy of the smelter have upon the policy; and each time they answered, that is "all right, go ahead."

Upon these undisputed facts there can be no doubt but what the appellant is estopped from interposing these forfeiture clauses as a defense in this case; a long line of authorities so hold. [Ins. Co. v. Hyman, 42 Colo. 156; Ins. Co. v. Nixon, 2 Colo. App. 265; Thompson v. Ins. Co., 169 Mo. 12; Rissler v. Ins. Co., 150

Mo. 366; Ins. Co. v. Allis Co., 11 Colo. App. 264; Hues-tess v. Ins. Co., 70 S. E. 403; Millis v. Ins. Co., 95 Mo. App. 211; Rudd v. Ins. Co., 120 Mo. App. 1; Weinberger v. Ins. Co., 170 Mo. App. 266; Combs v. Savings & Ins. Co., 43 Mo. 148; McCullough v. Ins. Co., 113 Mo. 606; Loeb v. Ins. Co., 99 Mo. l. c. 55; Prentice v. Ins. Co., 77 N. Y. 483; Hartley v. Ins. Co., 33 Ins. L. J. 329, 91 Minn. 382; Ins. Co. v. May, 43 S. W. 73; Trustees St. Clara Academy v. Ins. Co., 98 Wis. 257; Ins. Co. v. Mahone, 21 Wall. 152; McCollum v. Ins. Co., 67 Mo. App. l. c. 80; Harness v. Ins. Co., 76 Mo. App. 410; Gandy v. Ins. Co., 29 S. E. 655; Ins. Co. v. Hart, 149 Ill. 513; Trust Co. v. Ins. Co., 79 Mo. App. 362; Benefit Assn. v. Tucker, 157 Ill. 194; Gibson v. Ins. Co., 53 Ark. 494; Ins. Co. v. Dowdall, 159 Ill. 179; Pechner v. Ins. Co., 65 N. Y. 195; Frye v. Equitable Society, 89 Atl. 57; Wilson v. Ins. Co., 91 Atl. 913; Ins. Co. v. Stanley, 82 S. E. 826; Clay v. Ins. Co., 25 S. E. 417; Blass v. Ins. Co., 46 N. Y. Supp. 392; Prendergast v. Ins. Co., 67 Mo. App. 426; Wich v. Ins. Co., 2 Colo. App. 484; Ins. Co. v. Smith, 3 Colo. 422; Ins. Co. v. Taylor, 14 Colo. 499; Ins. Co. v. Donlon, 16 Colo. App. 416; U. S. Accident Assn. v. Kittenring, 22 Colo. 257; Strauss v. Ins. Co., 9 Colo. App. 386.]

Also under the facts of this case, the authorities hold that Kilpatrick & Hanley were the *alter ego* of the insurance company, and their knowledge of the fact that the smelter was shut down and their assurances to Doepke that it was "all right" is a waiver. [Thompson v. Ins. Co., 169 Mo. l. c. 25, and cases there cited; Rissler v. Ins. Co., 150 Mo. 366; Shutts v. Ins. Co., 159 Mo. App. l. c. 441; Prentice v. Ins. Co., 77 N. Y. l. c. 487; Wooldridge v. Ins. Co., 69 Mo. App. 413; Ins. Co. v. Hyman, 42 Colo. 156; Crouse v. Ins. Co., 79 Mich. 249; Andrus v. Casualty Co., 91 Minn. 358; Hart v. Ins. Co., 9 Wash. 620; Haight v. Ins. Co., 92 N. Y. 51; Burnham v. Ins. Co., 63 Mo. App. 85; Mont-

gomery v. Ins. Co., 80 Mo. App. 500; Ross-Langford v. Ins. Co., 97 Mo. App. 79.]

A waiver may be inferred from the acts and conduct of the agents of the insurance company and need not be proved by express agreement. When Doepke informed Kilpatrick, the agent of the insurance company who wrote this policy, that the mill was shut down, even though Kilpatrick had not assured him that everything was "all right," yet if he expressed no dissent, such conduct on his part would be a waiver. At least, it would be such conduct as would send the question of waiver to the jury. [Ins. Co. v. Dowdall, 159 Ill. 179; Bowen v. Ins. Co., 69 Mo. App. 272; Millis v. Ins. Co., 95 Mo. App. l. c. 217; Appel v. Surety Co., 132 N. Y. Supp. 200; Hatcher v. Ins. Co., 127 Pac. 588; Ins. Co. v. Fahrenkrug, 68 Ill. 463; Ins. Co. v. Johnston, 42 Ill. App. l. c. 73; Draper v. Ins. Co., 190 N. Y. 12; Loeb v. Ins. Co., 99 Mo. l. c. 58; Coppoletti v. Ins. Co., 143 N. W. 787; Bank v. Ins. Co., 109 Mo. App. l. c. 660; St. John v. Ins. Co., 107 Mo. App. 700; Ins. Co. v. Lewis, 187 U. S. l. c. 353; Ins. Co. v. Norton, 96 U. S. 234.]

A policy of insurance is not void by reason of the plant being shut down, but only voidable, and the insurance company must cancel and return unearned premium. Not having done so, the policy continues in force. [Patterson v. Ins. Co., 174 Mo. App. 37; Flannigan v. Ins. Co., 46 N. Y. Supp. 687; Laundry Co. v. Ins. Co., 151 Mo. l. c. 98; Miller v. Ins. Co., 106 Mo. App. l. c. 211; Anthony v. Ins. Co., 48 Mo. App. l. c. 73; Brix v. Fidelity Co., 171 Mo. App. 518; Ins. Co. v. Ashby, 102 N. E. (Ind.) 45; Ins. Co. v. Smith, 3 Colo. 422; Prentice v. Ins. Co., 77 N. Y. l. c. 488; Ins. Co. v. Koehler, 168 Ill. 293; Ins. Co. v. Catlin, 163 Ill. 256; Ins. Co. v. Johnston, 42 Ill. App. 76; Born v. Ins. Co., 110 Iowa, 379; Cassimus Bros. v. Ins. Co., 135 Ala. 256; Viele v. Ins. Co., 26 Iowa, 9; Ins. Co. v. Knutson, 67 Kan. 71; Schreiber v. Ins. Co., 43 Minn.

367; McCollum v. Ins. Co., 61 Mo. App. l. c. 354; Saville v. Ins. Co., 8 Mont. 419; New v. Ins. Co., 31 N. E. 475; Ins. Co. v. Jones, 92 N. E. 879; Weinberger v. Ins. Co., 170 Mo. App. 266; McIntyre v. Ins. Co., 131 Mo. App. l. c. 93; Ins. Co. v. Johnston, 143 Ill. 106; Ins. Co. v. Richmond Mica Co., 102 Va. 429; Rissler v. Ins. Co., 150 Mo. 366.]

After the fire occurred the agents of the company demanded the balance of the unpaid premiums from the assured, which it paid; and the law is that the acceptance of the premium after fire is a waiver of any violation of policy after the agent of the insurance company knew of it. [Flannigan v. Ins. Co., 46 N. Y. Supp. 687; Ins. Co. v. Raddin, 120 U. S. l. c. 195; Baker v. Ins. Co., 77 Fed. 550; Ins. Co. v. Wolff, 95 U. S. 326; Ins. Co. v. Freeman, 47 S. W. 1025.]

We are, therefore, of the opinion that under the great weight of authority, under the facts of this case, the appellant has waived the forfeiting conditions of the policy, and is estopped from interposing them as a defense to this case.

VII. What is said regarding the vacancy clause of the policy is applicable to and controlling as to the incumbrance clause of the policy.

The agents of the appellant not only knew of the mortgages being upon the property, but canceled two other policies they had issued on it because of those incumbrances, and issued two others in their stead.

This company should not be permitted to thus blow hot and cold. If it wished to rely upon these forfeiting clauses of the policy, it should have returned the unearned premiums and declared the policy void before the fire occurred; but having failed to do either, it will not, at this late date, be heard to say that the policy was void because of the violations of said forfeiting clauses.

VIII. It is next insisted by counsel for appellant that its agents, Kilpatrick & Hanley, were acting in collusion with the respondent and against the interest of the appellant.

Counsel do not make it clear as to when or how this conspiracy was formed, or the purpose they intended to accomplish by it. Certainly they did not **Collusion.** enter into a conspiracy to burn the smelter by a stroke of lightning from heaven; nor did the vacancy of the smelter or the incumbrances thereon contribute or operate as conductors of the lightning from the clouds to the smelter, nor were they inducing causes of the lightning striking the same.

Moreover, the undisputed evidence is that the mortgages were paid and satisfied long before the fire occurred. So I am unable to see in what possible way the vacancy of the smelter and the satisfied incumbrances thereon had to do with the fire, or how the alleged conspirators could have co-operated with the lightning in destroying the smelter. Such a thing is preposterous.

The agents of the company did nothing but tell the true facts of the case as disclosed by the physical facts and the undisputed evidence in the case. If an agent may not do that, even though it may be detrimental to the interest of his principal, then the time has come when such agencies should be abolished.

There is not a scintilla of evidence in this case that tends to show that Kilpatrick & Hanley were acting collusively against the appellant.

IX. Counsel for appellant complain of the action of the trial court in refusing to give their instructions numbered three, four and five, as asked, and in modifying them and giving them in the modified form.

Counsel say that, "By its modification of these instructions, the court told the jury that they could not find for the defendant on the question of waiver unless

they believed from the evidence that 'Doepke for the plaintiff company agreed and consented that said agents Kilpatrick and Hanley should conceal from the defendant company' the facts constituting the breaches of the conditions of the policy.''

These instructions should not have been given at all, either as asked by counsel or as modified by the court, for the reason that there was no evidence upon which to base them.

We disposed of this question in Paragraphs Six and Seven of this opinion, and no good purpose would be served by discussing it further at this place.

X. It is finally insisted by counsel for appellant that:

"The court erred in giving plaintiff's instruction numbered 6 and thereby instructing the jury in effect that if they found from the evidence that, prior to the institution of this suit, plaintiff paid all necessary corporation fees to the State of Colorado and obtained from the Secretary of State of Colorado a certificate of authority to do business in the said State, the fact that plaintiff had not paid said fees and obtained said certificate of authority prior to its alleged acquisition of title to the property in question, or prior to the issuance of the policy in suit, or prior to the fire, was immaterial.''

**Authority to do Business.**

The evidence discloses the fact that at the time the policy in suit was issued, the respondent had not taken out a license to do business in the State of Colorado; and had not done so at the time it purchased the property upon which the buildings insured stood, for which it paid about $175,000, and received a general warranty deed thereto; but subsequently thereto, it took out a license to do business in the State, and paid all fees and taxes due on the property, long before the fire occurred.

That instruction correctly declared the law.

This question has been passed upon by the Supreme Court of Colorado and by the Supreme Court of the United States in a case which went up from Colorado.

In the case of Ins. Co. v. Allis Co., 11 Colo. App. 264, l. c. 269, the court said:

"There is no provision that the contracts of a corporation which has failed in compliance with the law shall be avoided; on the contrary, their validity is recognized and they are enforcible not only against it, but against its officers, agents and stockholders; nor does the statute assume to deprive it of any remedy which it would otherwise have upon its contracts or for the protection of its property rights. No consequence is attached to the failure except the subjecting of its officers, agents and stockholders to a personal liability on its contracts; and the courts cannot very well go further than the Legislature has gone. We feel entirely safe in saying that there is nothing in the statute by which the plaintiff's capacity to sue, or its right to maintain its action to enforce its demand, is in any way affected." The following cases are cited: Utley v. Mining Co., 4 Colo. 369; Tabor v. Mfg. Co., 11 Colo. 419; Kindel v. Lithographing Co., 19 Colo. 310.

In the case of Kindel v. Lithographing Co., 19 Colo. 310, the Supreme Court of Colorado expressly holds that failure of a foreign corporation doing business in Colorado to file a certificate, as required by the Constitution, article 15, section 10, subjects its officers, agents and stockholders to certain personal liabilities, but does not affect its right of action against a resident of the State for goods sold and delivered.

This same question came before the Supreme Court of the United States in the case of Fritts v. Palmer, 132 U. S. 282. This case arose under the laws of Colorado. In that case, the court said (Syl.): "The

Constitution of Colorado provided that no foreign cor-
poration should do business in the State without hav-
ing a known place of business in the State and an
agent upon whom process might be served. . . .
Said act further provided that no corporation, for-
eign or domestic, should purchase or hold real estate
except as provided in the act. The act did not indi-
cate a mode by which a foreign corporation might
acquire real estate in Colorado." A foreign non-
complying corporation took a deed to property and
its title was attacked on the ground "that the com-
pany violated the laws of the State [Colorado] when
it purchased the property without having previously
designated its place of business and an agent." The
United States Supreme Court held that the grantee
held a good title to the property, inasmuch "as the
Constitution and laws of Colorado did not prohibit
foreign corporations from purchasing and holding
real estate within its limits," and that no one could
question the title but the sovereignty.

In Seymour v. Mines, 153 U. S. 523, syl., it is
held: "The State only can challenge the right of a
foreign corporation to hold real estate within its lim-
its."

In Smith v. Sheeley, 12 Wall. 358, syl. 2, it is
held: "A conveyance of land cannot be treated as a
nullity by the grantor who has received the consid-
eration for the grant, there being no judgment of ous-
ter against the corporation at the instance of the
Government."

In Summet. v. Realty Co., 208 Mo. l. c. 512, this
court said:

"This court is next asked to reverse the judg-
ment in this cause because the record discloses that
the insurance company held the land in question for
a period of more than six years, which is in violation
of section 7 of article 12 of the Constitution of 1875.

This question can be raised by the State alone. It is a matter which does not concern the individual, as held in the following cases." [See cases there cited.]

In Bank v. Matthews, 98 U. S. l. c. 629, the court said: "A private person cannot, directly or indirectly, usurp this function of the Government" and question such title. [Bank v. Whitney, 103 U. S. l. c. 101; Ins. Co. v. Hyman, 42 Colo. 156.]

It is expressly held by the Supreme Court of Colorado: "Where a foreign corporation actually complies with the Act of April 6, 1901 (Laws 1901, p. 116, c. 52), prescribing the terms on which a foreign corporation may do business within the State, and prohibiting the exercise of corporate powers or the prosecution or the defense of actions until the required fee shall have been paid and the prescribed certificate obtained, subsequent to the commencement of an action on a contract made with a domestic corporation, it may maintain the action and enforce the contract; the prohibition being only provisional, subject to removal at any time." [Trust Co. v. Rope Co., 41 Colo. 299, 92 Pac. 727, syl. 5.]

The statute in question, and the contract of purchase of the land mentioned, being products of the State of Colorado, and her courts holding that under that statute said contract was valid, it would be presumption on the part of this court to hold otherwise, especially when this court has repeatedly ruled the same way in cases arising under similar statutes of this State.

There are some other minor points discussed, but they in no manner affect the merits of the case, and I will therefore pass them by.

Finding no error in the record, the judgment is affirmed. *Faris, J.,* concurs in the result; *Blair* and *Revelle, JJ.,* concur; *Graves, Bond* and *Walker, JJ.,* dissent in a separate opinion by *Graves, J.*

GRAVES, J. (dissenting).—I cannot concur in the majority opinion. The facts of the case and the questions raised are as follows:

Plaintiff is alleged to be an Arizona corporation, and defendant is alleged to be a Pennsylvania corporation, doing a general fire insurance business. The petition is an ordinary petition upon a fire insurance policy, issued by defendant to plaintiff in the State of Colorado. The property is alleged to have been destroyed by fire during the life of the policy.

This suit was brought in Audrain County, Missouri, and there tried, resulting in a judgment for the plaintiff in the sum of $2689.57, the amount of the policy for $2500 and interest thereon. Service of summons in the case was had by the sheriff of Cole County, Missouri, delivering a copy of the petition and summons to Frank Blake, the then Superintendent of the Insurance Department of Missouri.

Preserved in the bill of exceptions by the plaintiff, we have the motion to quash the service in this cause, which motion reads:

"Now comes the defendant herein and appearing for the purposes of this motion and for the purposes of this motion only, moves to quash the writ herein issued and the return thereon by the sheriff of Cole County and dismiss the cause for the following reasons, to-wit:

"1. The circuit court of Audrain County and no other court of the State of Missouri has jurisdiction over the person of the defendant herein nor over the subject-matter of said action.

"The plaintiff is a corporation existing under the laws of the Territory of Arizona, but attempting to engage in business in the State of Colorado and also attempting, according to the allegations of the petition herein filed, to exercise its corporate powers in the State of Colorado; and according to the alle-

-gations of plaintiff's petition, was the owner of the property in said petition described in the State of Colorado; and the defendant is a foreign corporation of the State of Pennsylvania doing business as an insurance company in the State of Missouri and also in the State of Colorado;

"That the alleged contract sued upon by plaintiff was made in the State of Colorado, and the insurance against fire by said alleged policy was against loss of property located in the State of Colorado; and said fire by which said property is alleged to have been destroyed took place in the State of Colorado. Hence, the alleged contract sued upon and the alleged cause of action in plaintiff's petition, if any, is a contract under the laws of Colorado and the cause of action arose in the State of Colorado and is located in the State of Colorado;

"That the defendant corporation is an insurance company of the State of Pennsylvania, and hence is a resident and a citizen of the State of Pennsylvania;

"That the said contract and said cause of action is located in the State of Colorado and is not a contract nor a cause of action in the State of Missouri;

"That under and by virtue of section 7042, Revised Statutes 1909, a foreign insurance company is required upon condition of doing business in the State of Missouri to make the Superintendent of the Insurance Department of the State of Missouri its agent upon whom service of process issuing out of the courts of the State of Missouri might be had; but said Superintendent of Insurance is and can be an agent for the purpose of service of process only for the benefit of the State of Missouri and a cause of action arising in the State of Missouri out of contracts made in the State of Missouri; and said section is solely for the benefit of actions located in the courts of the State of Missouri; and said Superintendent of Insur-

ance is not an agent for the purpose of having process served upon him for a cause of action arising outside of the State of Missouri and in behalf of nonresidents of the State of Missouri; and the said Frank Blake, the said Superintendent of the Insurance Department of the State of Missouri, upon whom service was had in said action, is not an agent for this defendant upon whom process could be served in the alleged cause of action set forth in plaintiff's petition.

"Wherefore, this defendant says that this court has not jurisdiction over the subject of this action nor over the person of this defendant.

"2. The bringing of this action in the State of Missouri and outside of the State of Colorado is an attempt on the part of the plaintiff to make use of the courts of the State of Missouri to deprive the defendant of judicial process by which it may procure the attendance of witnesses on its behalf in a defense of the merits of said cause of action; that this defendant is entitled to a defense on the merits of said cause of action and has a defense thereto consisting as follows: First, said policy is void; second, said policy became void by reason of acts of the defendant after the issue of said policy; third, it is void in fact and in law; fourth, the defendant was not the sole and unconditional owner of said property described in said petition at the time of the issuing of said policy, neither was it the sole and unconditional owner thereof at the time of the alleged fire; and further the plaintiff has avoided said policy and caused the same to become null and void by its violation of the terms of said policy, and said plaintiff did not have destroyed by fire a portion of the property as alleged in its said petition.

"That said petition presents many issues which the defendant acting on its own behalf will be com-

pelled to defend against, and there is a large amount of testimony in the way of witnesses and in the way of documentary evidence, all located in the State of Colorado, which this defendant cannot produce in any court of the State of Missouri by judicial process, and for that reason this court should not take jurisdiction of said cause and cannot have jurisdiction of said cause; and to be allowed to maintain said action in the State of Missouri would be to deprive the defendant of that due process of law which the Constitution of the State of Missouri guarantees to every foreign insurance company entering the State for the purpose of doing business therein; and to allow said action to be prosecuted in the State of Missouri is to deny to the defendant the equal protection of the laws, and is, therefore, in disobedience of section 1 of article 14 of the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

This motion the court *nisi* overruled, and the defendant answered. In this answer the jurisdiction is thus challenged:

"The defendant herein admits that at all dates herein the plaintiff was and now is a corporation duly organized and existing under and pursuant to the laws of Arizona, and that at all of said times such defendant was and now is a foreign corporation duly existing under the laws of the State of Pennsylvania, and at all of said times said defendant as such company and corporation has been and now is engaged in a general fire insurance business in the State of Colorado, and also in the State of Missouri, and was and now is licensed and authorized to do business in both of said States. Defendant says that the policy or contract of insurance issued was made and exe-

cuted in the State of Colorado upon property located in the State of Colorado and further says that therefore said contract of insurance is a contract under the laws of the State of Colorado and not a contract under the laws of the State of Missouri.

"That the said Frank Blake, Superintendent of the Insurance Department of the State of Missouri, upon whom service was had in said cause, was not authorized by the laws of the State of Missouri to acknowledge or receive service of process issued from any court of record in the State of Missouri for this defendant in said cause of action, hence this court has no jurisdiction over this defendant, nor the subject-matter of this action, and section 7042, Revised Statutes 1909, does not apply to this action, for the reason that said contract of insurance is a contract of the State of Colorado and not of the State of Missouri and the cause of action can only be maintained in the State of Colorado, and said section 7042 is unconstitutional and void because it denies to this defendant due process of law and is an effort to take the property of this defendant without due process of law, and is therefore in conflict with section 30 of article 2, of the Constitution of the State of Missouri, which provides that no person shall be deprived of property without due process of law, and is in conflict with section 1, article 14, of the Constitution of the United States, which provides that no state shall make or enforce any law which shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.

"Defendant further says that said section 7042 was enacted by the General Assembly of the State of Missouri in the year 1885, as shown by Laws 1885, page 183, and that the title to said act is as follows:

" 'An act to amend section 6013, article 4, of the Revised Statutes of Missouri of 1879, entitled, "General Provisions" relating to insurance and service of legal process therein.'

"Whereas in truth and in fact, said act of the Legislature did not amend said section 6013, but repealed said section and enacted a new section in lieu thereof, and is therefore in conflict with section 28, article 4, of the Constitution of Missouri, which provides that no bill shall contain more than one subject, which shall be clearly expressed in said title, is contrary to the body of said act, and the subject of the body of the act is not expressed in the title, either clearly or otherwise.

"And defendant further says that said act is contrary to the terms of section 34 of article 4 of the Constitution of Missouri which provides that: 'No act shall be amended by providing that designated words thereof be stricken out, or that designated words be inserted, or that designated words be stricken out and others inserted in lieu thereof; but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended.'

"Wherefore, defendant says that said section 7042, Revised Statutes 1909, is unconstitutional and void and that the service herein is void and this court has no jurisdiction over the defendant or over the subject-matter of this action, and to entertain further jurisdiction in this cause would be to deprive the defendant of its property without due process of law."

Further parts of the answer set out various defenses to the suit upon the policy, which matters can be best stated, if necessary, with the points made. Reply placed in issue matters in the answer.

I. In this dissent I am not unmindful of the ruling of this court in State ex rel. v. Grimm, 239 Mo. 135, and cases following it. I take it that the United States Supreme Court has fully sustained the dissent in the Grimm case, and no specious argument can change the force and effect of the very recent holding of that court. This, however, we discuss later.

*Jurisdiction: Contracts Made Outside of State.*

It is clear in this case that the defendant did nothing more to give the circuit court of Audrain County jurisdiction over its person than the filing of the two documents we have set out in the statement. One is called a motion to quash the service, and the other is the answer. It is clear that jurisdiction over the person was challenged from start to finish. Jurisdiction over the person is the proper subject-matter of a plea in the answer. Section 1804, Revised Statutes 1909, reads:

"When any of the matters enumerated in section 1800 do not appear upon the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject-matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action."

Section 1800, Revised Statutes 1909, referred to in section 1804, supra, reads:

"The defendant may demur to the petition, when it shall appear upon the face thereof, either: First, that the court has no jurisdiction of the person of the defendant, or the subject of the action; or, second, that the plaintiff has not legal capacity to sue; or, third, that there is another action pending between the same parties, for the same cause, in this State;

or fourth, that there is a defect of parties plaintiff or defendant; or, fifth, that several causes of action have been improperly united; or sixth, that the petition does not state facts sufficient to constitute a cause of action; or seventh, that a party plaintiff or defendant is not a necessary party to a complete determination of the action.''

From this it appears that jurisdiction over the person is a subject-matter of demurrer, if it appears from the face of the petition, but if it does not so appear, then it is a subject-matter of answer, and is only waived in the event it is not challenged by one or the other methods. The challenge in this case was not only timely, but continuous. Jurisdiction over the person can only be acquired by service of the person had according to law, or by consent, expressed or implied. Implied consent consists in doing such things as would indicate a willingness for the court to try the case—i. e. as filing answer or doing some similar thing, without questioning the jurisdiction of the court. Implied consent is more frequently denominated waiver of jurisdiction. In the case at bar the defendant has waived nothing as to jurisdiction. Dragged into court by the ears, as it were, it has persistently protested want of jurisdiction. It has lodged the plea where the statutes of this State say it may be lodged, i. e., in its answer. The reply of the plaintiff filed herein admits all the facts necessary to show want of jurisdiction, if our views of the law are correct. In other words, the reply admits that plaintiff is an Arizona corporation, and the defendant is a Pennsylvania corporation, and that ''the contract of insurance was made and executed in Colorado, upon property in Colorado.'' This admission shows that it was not the result of business done in Missouri. The full effect of this omission is not in the petition, and therefore demurrer was not necessarily the pleading for defendant. Under the plea

to the jurisdiction found in the answer, and the admission found in the reply, the circuit court of Audrain County should have found for defendant upon the issue of jurisdiction.

Our statute, section 7042, Revised Statutes 1909, requires a foreign insurance company to designate the Superintendent of Insurance as its agent to receive service of process in suits filed against such foreign insurance company in the courts of this State. This designation is a pre-requisite to a license to do business in this State. A close reading of our statute, however, will disclose no legislative intent to make service of process in this manner effective in any case except one arising through contracts made and acts done in this State, whilst the corporation was licensed to transact business therein. In the Grimm case, supra, 239 Mo. l. c. 187, I then took occasion to say:

"Neither do I believe section 7042, Revised Statutes 1909, charges our courts with the duty of hearing a case such as is now pending in the court of the respondent Grimm in the city of St. Louis. That section compels foreign insurance companies doing business in this State to make our State Superintendent of Insurance an agent to accept service of process. I believe that this section only confers jurisdiction upon our courts to hear and determine controversies growing out of insurance contracts made in this State, whilst a foreign insurance company is doing business in this State under a license from the State. It is said in the opinion by my learned brother that there is no limitation in this statute, and hence cases from other jurisdictions where there is a limitation in the statute are not in point. I think the statute, when considered as a whole, has a limitation. I think from its language there can be gathered a clear legislative intent to limit the jurisdiction of courts to actions upon contracts made in this State.

Note the language: 'Service of process as aforesaid, issued by any such court, as aforesaid, upon the Superintendent, shall be valid and binding and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this State.' This follows the language emphasized by my brother, and to my mind characterizes the kind of litigation to which foreign insurance companies can be called upon to respond in our courts. In other words, it fixes a limitation of the kind of causes over which our courts can assume jurisdiction. The statute specifically refers to policies 'outstanding in this State.' It is true that this clause refers to a time when such company has withdrawn from the State or is no longer doing business in the State, but it also refers to contracts made when in the State. The policies above mentioned in the statute are policies issued when the company was in the State. The question then arises, why preserve this method of service after the company has left the State and limit it to cases upon policies outstanding in this State only, if the previous portion of the statute referred to all kinds of actions, whether upon contract in this State or contracts made out of this State?

"To my mind the substituted method of service provided for in this statute only applies to actions arising upon contracts made in this State, and not to actions upon contracts made out of this State. In other words, the statute limits the class of cases in which this kind of service can be effectively had, and the case pending in respondent's court is not one of the class, if the averments in the complex motion are true. How the relator may now avail itself of the situation, with jurisdiction over its person having been decided by the majority, may be a question, but not one for discussion at this time. To do so would be but to suggest to counsel how to try their cases.

"For these reasons, somewhat hurriedly drawn, I dissent in this case, as well as in those which follow it upon the questions discussed. *Valliant, C. J.,* concurs in these views."

The exact question, since the writer expressed the foregoing views, has come up in the U. S. Supreme Court in construing a similar statute in the State of Louisiana. By section 1 of the Louisiana act a foreign corporation was required to file a written declaration setting forth the places in the State where it was doing business and the name of its "agents . . . in this State upon whom process may be served." Section 2 of the act reads:

"Whenever any such corporation shall do any business of any nature whatever in this State without having complied with the requirements of section 1 of this act, it may be sued for any legal cause of action in any parish of the State where it may do business, and service of process in such suit may be made upon the Secretary of State the same and with the same validity as if such corporation had been personally served."

In Simon v. Southern Ry. Co., 236 U. S. 115, l. c. 130, Mr. Justice LAMAR, in discussing these statutes, says:

"Subject to exceptions, not material here, every State has the undoubted right to provide for service of process upon any foreign corporations doing business therein; to require such companies to name agents upon whom service may be made; and also to provide that in case of the company's failure to appoint such agent, service, in proper cases, may be made upon an officer designated by law. [Mutual Reserve Assn. v. Phelps, 190 U. S. 147; Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602.] *But this power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the*

*jurisdiction of the State enacting the law.* Other-
wise, claims on contracts, wherever made, and suits
for torts, wherever committed, might, by virtue of
such compulsory statute, be drawn to the jurisdiction
of any State in which the foreign corporation might
at any time be carrying on business. The manifest
inconvenience and hardship arising from such extra-
territorial extension of jurisdiction by virtue of the
power to make such compulsory appointments could
not defeat the power if in law it could be rightfully
exerted. *But these possible inconveniences serve to
emphasize the importance of the principle laid down
in Old Wayne Mut. Life Assn. v. McDonough, 204 U.
S. 22, that the statutory consent of a foreign corpora-
tion to be sued does not extend to causes of action
arising in other States.*

"In that case the Pennsylvania statute, as a con-
dition of their doing business in the State, required
foreign corporations to file a written stipulation
agreeing, ' "that any legal process affecting the com-
pany, served on the Insurance Commissioner . . .
shall have the same effect as if served personally on
the company within this State." ' The Old Wayne
Life Association having executed and delivered, in
Indiana, a policy of insurance on the life of a citizen
of Pennsylvania, was sued thereon in Pennsylvania.
The declaration averred that the company 'has been
doing business in the State of Pennsylvania, issuing
policies of life insurance to numerous and divers resi-
dents of said county and State,' and service was made
on the Commissioner of Insurance. The association
made no appearance, and a judgment by default was
entered against it. Thereafter suit on the judgment
was brought in Indiana. The plaintiff there intro-
duced the record of the Pennsylvania proceedings and
claimed that, under the full faith and credit clause of
the Constitution, he was entitled to recover thereon
in the Indiana court. There was no proof as to the

company having done any business in the State of
Pennsylvania, except the legal presumption arising
from the statements in the declaration as to solicit-
ing insurance in that State.  This court said:

"'But even if it be assumed that the company
was engaged in some business in Pennsylvania at the
time the contract in question was made, it cannot be
held that the company agreed that service of process
upon the Insurance Commissioner of that Common-
wealth would alone be sufficient to bring it into court
in respect of all business transacted by it, no matter
where, with or for the benefit of citizens of Penn-
sylvania. . . .  Conceding, then, that by going into
Pennsylvania, without first complying with its stat-
ute, the defendant association may be held to have
consented to the service upon the insurance commis-
sioner of process in a suit brought against it there
in respect of business transacted by it in that Com-
monwealth, such assent cannot properly be implied
where it affirmatively appears, as it does here, that
the business was not transacted in Pennsylvania.
. . .  As the suit in the Pennsylvania court was
upon a contract executed in Indiana; as the personal
judgment in that court against the Indiana corpora-
tion was only upon notice to the Insurance Commis-
sioner, without any legal notice to the defendant as-
sociation, and without its having appeared in person
or by attorney or by agent in the suit; and as the
act of the Pennsylvania court in rendering the judg-
ment must be deemed that of the State within the
meaning of the Fourteenth Amendment, we hold that
the judgment in Pennsylvania was not entitled to the
faith and credit which, by the Constitution, is re-
quired to be given to the  . . .  judicial proceed-
ings of the several States, and was void as wanting
in due process of law.'

"*From the principle announced in that case it
follows that service under the Louisiana statute*

*would not be effective to give the district court of Orleans jurisdiction over defendant as to a cause of action arising in the State of Alabama. The service on the Southern Railway, even if in compliance with the requirements of Act 54, was not that kind of process which could give the court jurisdiction over the person of the defendant for a cause of action arising in Alabama."* (The italics are ours).

To my mind this ruling of our highest tribunal will stand the test of reason. There is no doubt that a State can require a foreign corporation to come into the State upon terms. Among those terms may be the designation of an agent to receive service of process in suits brought in the courts of the State, but the reasonable construction of all such statutes is, that they refer to suits arising out of business done in the State, and not elsewhere. The laws of a State are presumably for the benefit of its own citizens, and not for outsiders.

The State when it imposes conditions upon foreign corporations is imposing conditions with reference to the business which the corporations expect to do in the State when they apply for licenses. These conditions are imposed for the purpose of protecting the State and its citizens. So that we maintain that this condition imposed by section 7042, supra, should be read in that light. This State has no special interest in making its courts the rendezvous of all alleged causes of action arising in other States, whose laws and procedure may render difficult the procurement of a judgment in such States. Section 7042 was never passed with the legislative intent to authorize such process to be served in cases arising in other jurisdictions. It should be construed (as we think it clearly reads) to have reference only to causes of action growing out of the contracts made and the acts done within this State. When thus construed, the trial court was without jurisdiction in the case, and

it should have so adjudged under the pleadings and admissions made in the pleadings.

II. It was said in the Grimm case that the form of the motion to quash the execution was such as to make a general appearance. To this I did not then agree and do not now. In the case at bar a similar contention is made. The suggestion in the Grimm case is that there are matters which go to the merits. In this case when the motion is read, whilst it is voluminous, it must in fairness be said that all that is said therein goes to the question of want of jurisdiction, and reasons why jurisdiction should not be assumed. The first paragraph of this motion in a rather lengthy way challenges the jurisdiction. It goes to nothing else. The second paragraph, at most, simply sets up reasons why the court should not assume jurisdiction over the person. Taken as a whole it is but a challenge to the jurisdiction and the appearance was special and not general.

*Appearance.*

It is further suggested that because the first line or so of the answer uses the words:

"Now comes the defendant herein and after leave of court had and obtained, for its answer herein, says:"

The record proper shows no application for leave to answer. The whole record proper so far as relates to the matter here involved, reads:

"During the regular September term, 1911, on September 4, 1911, the defendant filed a motion to quash writ and return.

"Further during said September term, 1911, on September 6, 1911, the court overruled defendant's motion to quash writ and return.

"Further during said September term, 1911, on September 14, 1911, awaiting the action of the Su-

267 Mo. 40

preme Court and its decision, this cause was ordered passed without action by this court.

"In Vacation, on December 16, 1911, this cause was by the court continued, awaiting the action of the Supreme Court.

"During the regular March term, 1912, on March 4, 1912, the defendant filed its answer, and deposited with the clerk of this court the sum of $80.05 as tender of premiums and interest paid by the plaintiff to the defendant on said policy; which answer, omitting caption and signatures, is as follows:"

It will be noted that after the ruling upon the motion to quash the service every other act was done by the court itself, until this answer was filed. Nothing in this record shows that defendant ever waived the matter of jurisdiction prior to filing its answer. If so, then by the very terms of section 1804, Revised Statutes 1909, the defendant did not waive the question, when it made such a question a part of its answer. It had the right to plead want of jurisdiction over its person along with other matters of defense. So that under the statutes of the State, sections 1800 and 1804, Revised Statutes 1909, this question of jurisdiction (although it be jurisdiction of the person) is well preserved and is here for our review.

Under the law there can be no question that by filing an answer which only goes to the merits of the case, jurisdiction of the person is waived. It may also be waived by a general appearance for any other purpose in the case, and it is useless to review the cases cited by counsel. Those cases are not this case. Here, like Houston v. Publishing Co., 249 Mo. 332, we have a case where the question of jurisdiction over the person has been kept a live issue from start to finish. Under the law the trial court should have found for defendant upon this plea in the answer. Other questions in the record need not be discussed. Nor should our previous ruling in the Grimm, and

the school of cases here with the Grimm case, be taken as *stare decisis* and preclude a further review of the question.   In my humble judgment the question is of such grave concern that it should never be considered settled until it is settled right.   [Mangold v. Bacon, 237 Mo. 496, and cases cited therein.]

The judgment appealed from should be reversed and I so vote.   *Bond* and *Walker, JJ.* concur in these views.